[File No. Cr. 223]

STATE OF NORTH DAKOTA, Appellant, v. ODD
BRAATHEN, Respondent

(43 NW2d 202)

312

Opinion filed May 31, 1950.   Rehearing denied June 28, 1950

*Wallace E. Warner,* Attorney General, *George Longmire,* States Attorney and *Philip R. Bangs,* for appellant.

*Day, Lundberg, Stokes, Vaaler* and *Gillig,* for respondent.

MORRIS, J. This is a criminal action by the State of North Dakota upon an information charging that the defendant "did commit the crime of Attempt to Burn a Building, committed as follows, to wit: That at the said time and place the said Odd Braathen did then and there wilfully, unlawfully, feloniously and maliciously attempt to set fire to and burn a building, namely the dwelling house located at 520 North Fourth Street, in Grand Forks, North Dakota, in violation of Section 12–3406 of the Revised Code of North Dakota, for 1943."

Section 12–3406 RCND 1943 upon which the charge in the information is based provides that: "Every person who willfully and maliciously attempts to set fire to, or attempts to burn or to aid, counsel, or procure the burning of, any of the buildings or property specified in this chapter, or who commits any act preliminary thereto or in furtherance thereof, shall be punished by imprisonment in the penitentiary for not less than one year nor more than two years, or by a fine of not more than one thousand dollars."

Section 12–3401 RCND 1943 provides in part that: "Every person who willfully and maliciously sets fire to, or burns, or causes to be burned, or who aids, counsels, or procures the burning of, any dwelling house, . . . whether the property of himself or of another, with intent to injure, damage, or defraud another, is guilty of arson . . . ."

The defendant pled not guilty and was tried before a jury who returned a verdict of "guilty of the crime of attempt to burn a building, as charged in the information."

The defendant made a motion for a new trial and as the first ground therefor alleged that the verdict was contrary to law for the reason that the defendant was charged with attempt and the facts proved by the State at the trial proved a completed act of setting fire to a building. The trial court agreed with the defendant upon this point and granted a new trial on the ground that the defendant was improperly charged under Section 12–3406. The State appeals from the order granting a new trial.

A fire occurred in the dwelling house of the defendant located at 520 North Fourth Street in Grand Forks, on August 6, 1947, which was extinguished by the Grand Forks Fire Department

before it had consumed any major portion of the building. The State established by the testimony of witnesses and by photographs introduced in evidence that there was a burning and charring of the wood of some of the interior before the fire was extinguished. The trial court determined that this was sufficient to constitute a burning, and therefore, the completed crime of arson. In this, the trial court was correct. In State v. Mutschler, 55 ND 120, 212 NW 832, this court quoted from the annotation in 1 ALR 1166 as follows: "To constitute the burning which is essential to the crime of arson, it is not necessary that the building should be consumed or materially injured. It is sufficient if the fire is actually communicated to any part thereof, however small."

This statement is supported by cases cited in the annotation referred to. Other cases of similar import are cited in these annotations: LRA1916D, 1299, 101 Am St Rep 23. It is clear from the evidence in this case that the burning resulting from the fire, proceeded to the point where the crime of arson was complete, if the fire was of incendiary origin.

The information states that the defendant did wilfully and maliciously attempt to set fire to and burn a dwelling in violation of Section 12–3406 RCND 1943. Thus it charges an attempt to commit the crime described and defined in Section 12–3401 as arson. It is clear from the evidence that the fire progressed beyond an attempt and resulted in the commission of a completed crime.

The defendant argues that an attempt "is a direct ineffectual act towards the commission of a crime" and as we said in State v. Maresch, 75 ND 229, 27 NW2d 1: "An allegation of an attempt to commit a crime implies two things, an intent and an overt act which tends directly toward but fall short of actual commission."

He asserts that an essential element of the attempt is the failure to consummate the crime and that when the crime is shown to have been completed, the element of failure is destroyed and there can be no conviction for attempt. This is the holding in Illinois. People v. Lardner, 300 Ill 264, 133 NE 375, 19 ALR 721. This rule prevails in some other jurisdictions. 14 Am Jur,

Criminal Law, Section 65, note 12. It cannot, however, be said to be the general rule. People v. Baxter, 245 Mich 229, 222 NW 149.

In this state we have a statute which bears directly upon the point in controversy. Section 12–0401 RCND 1943 provides: "An act done with intent to commit a crime and tending but failing to effect its commission, is an attempt to commit that crime. Any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was perpetrated by such person in pursuance of such attempt, unless the court, in its discretion, discharges the jury and directs such person to be prosecuted for such crime."

This statute expressly permits conviction of an attempt to commit a crime where it appears on the trial that the crime was consummated, unless the court discharges the jury and directs prosecution for the consummated crime. The only parallel statute that we have been able to discover in another jurisdiction is Section 260 of the Penal Law of New York.

We find little authority in New York in reference to the application of that statute. However, it is there held that the section is applicable only to a trial upon an indictment for an attempt to commit a crime and not to one upon an indictment for the crime itself. People v. Cosad, 253 Appellate Division 104, 1 NYS2d 132; People v. Dartmore, 48 Hun 321, 2 NYS 310.

California has a similar statute which was considered in People v. Horn, 25 California Appeals 583, 144 Pac 641. The defendant was charged in the information with statutory rape and was found guilty by the jury of an attempt to commit the crime so charged. The court held that the statute was applicable where there was evidence from which the jury could have concluded that rather than the crime itself, the accused had been guilty of an attempt to commit it. The New York and California cases are important here as indicating that the statute applies where the indictment or information charges an attempt but the evidence shows that the crime charged as an attempt was consummated. Of similar import, but involving somewhat differently worded statutes, are: Jimenez v. State, 158 Florida 719,

30 So2d 292; State v. Benson, 91 Mont 21, 5 Pac2d 223; State v. Harvey, 119 Ore 512, 249 Pac 172.

The defendant would seek to avoid the impact of the authorities above quoted by arguing that the attempt in this case is a completed offense, made so by Section 12–3406 which deals not with attempts generally, but with attempts to perform the specific acts provided by that section, and limited by its terms to attempts to commit the crimes prescribed by Chapter 12–34 RCND 1943 pertaining to arson, while attempts generally are made punishable by Section 12–0402. His argument, while not without persuasive qualities, is overcome by the fact that although the information charges a violation of Section 12–3406, it nevertheless charges that the defendant "did commit the crime of attempt to burn a building" in the manner set out in the information. The fact that the information sets forth that the attempt charged therein is a violation of Section 12–3406 prescribing specific penalties for those attempts falling within its terms does not render Section 12–0401 inapplicable. The latter section applies to charges of attempt whether being tried as violations of Section 12–3406 or of the general statute prescribing punishment for attempts (Section 12–0402). Any attempt that is made criminal by statute must, in a sense, be a completed crime, otherwise it may not be punished. The attempt must be complete as such. When viewed in that light, defendant's argument that Section 12–3406 defines a completed crime and therefore Section 12–0401 does not apply, loses its force. We hold that Section 12–0401 applies to the crime charged in the information, and that although it appears that the crime intended or attempted was perpetrated by the defendant, he might be lawfully convicted of the attempt.

It is clear that the trial court erred in granting a new trial upon the ground that the defendant was improperly charged with an attempt in the information and that he should under the evidence have been charged with arson. No other ground is given by the court for granting a new trial, but other grounds are assigned in the defendant's motion. It therefore becomes our duty to examine them. The ultimate question is the correctness of the order, and not the reason for it, that appears in the

record below. If any ground specified in the defendant's motion for a new trial is sufficient, the order must be sustained. Davis v. Jacobson and Dinnie, 13 ND 430, 101 NW 314; Gooler and Goer v. Eidsness, 18 ND 338, 121 NW 83; Citizens' Bank of Drayton v. Schultz, 21 ND 551, 132 NW 134.

As a second ground for a new trial the defendant urges that the evidence is insufficient to support the verdict, and at the beginning of his argument calls our attention to the rule that in passing upon a motion for a new trial, the trial court is clothed with a wide discretion, and his determination will not be disturbed unless there appears to have been an abuse of such discretion. This is undoubtedly the rule where the trial court has expressed his views with reference to the sufficiency of the evidence. State v. McEnroe, 68 ND 615, 283 NW 57; State v. Strong, 52 ND 197, 201 NW 858; State v. Weber, 49 ND 325, 191 NW 610. In this case we do not have the benefit of the trial court's judicial discretion, for that discretion has not been exercised with reference to the sufficiency of the evidence.

On August 6, 1947, the defendant was living with his family at 520 North Fourth Street, Grand Forks, North Dakota. His family consisted of his wife, two stepsons, and a daughter. The house was owned by his wife's mother. The defendant was engaged in the business of buying, selling, and repairing automobiles and trucks. The Grand Forks Fire Department received a call at 7:32 p.m., August 6, 1947, and immediately proceeded to the defendant's residence. On observing the fire in the interior of the house, the firemen broke in the rear door which was locked and extinguished the fire in the interior of the building. There was fire burning in the kitchen, the living room, a bedroom, and a closet. There was an electric hot plate sitting on the kitchen floor with the cord plugged into an outlet. The bed and mattress in the bedroom were afire, as were the cushions on a davenport in the living room. There was some inflammable liquid on the congoleum rug on the kitchen floor. A kitchen window was shattered with the glass lying outside. A door leading into an adjoining toilet room was burning. Some curtains were burned and clothing hanging on the wall and in the closets was scorched.

The defendant came home on the evening in question about

six o'clock and left about seven. There was no one else at home, his wife being down town, and the children out playing. He locked the house when he left. The evidence up to this point is sufficient to establish that a fire of incendiary origin occurred, as charged in the information, and that the defendant had an opportunity to set the fire. Evidence connecting the defendant with starting the fire comes from the lips of the defendant himself by way of admissions and statements made to various officers. The defendant denies that he set the fire and asserts that the trial court erred by permitting testimony concerning the admissions. The trial court's ruling in this respect is one of the grounds for plaintiff's motion for a new trial. The sufficiency of the evidence and the correctness of the trial court's ruling on the admissions will be considered together.

The State placed Mr. Hill, the Sheriff of Grand Forks County, on the witness stand and asked him to state a conversation that he had with the defendant on the evening of August 7, 1947. Defendant's attorney then asked for a conference with the court, and the record shows that a conference between the court and counsel ensued. The court then excused the jury and heard at length the testimony of Hill and other witnesses regarding conversations with the defendant and statements by him. The defendant also testified. At the close of this proceeding, defendant's counsel urged that the defendant's statements were involuntary and inadmissible. The court ruled that the statements made by the witnesses Hill, Rausch, and Robinson were admissible and that the weight to be given to them were questions for the jury. The jury was then recalled and Hill proceded to testify that on the evening of August 7, the defendant made a statement with regard to his movements on the evening of the fire in which he said he was home for fifteen or twenty minutes at about seven o'clock. He stated that he then went to his brother-in-law's garage; that he and another man started to another place in the vicinity to look at some truck boxes that were for sale; that they heard the fire siren and noticed some people running; and he learned that his house was on fire. In that conversation the defendant denied that he had anything to do with setting the fire. The defendant was arrested on August

12, 1947. Hill testified that the defendant, while lodged in jail, stated that he started the fire because he was mad at his wife. He said that he took gasoline that he had used to wash his hands and tools in the garage, and scattered the gasoline about the house. He then plugged the hot plate into the socket in the kitchen and placed a paper over the hot plate, and left the house and locked it so that the children couldn't get in and would not be harmed in any way.

On the evening of August 12, the defendant had been asked to appear at the office of the chief of police. He reached the office at about eight o'clock and for some two hours discussed the matter of the fire with various officials, including Richard P. Rausch, Assistant Attorney General, and George Robinson, Deputy Fire Marshal. He told these two witnesses that he attempted to clean his electric razor in a can of gasoline and dry it over a hot plate; that the gasoline fumes ignited and the fire leaped to the can of gasoline. He ran about attempting to carry the can out through the front room and spilled the burning gasoline. The can got so hot that he dropped it, and being frightened, ran out to his car and drove away. In his testimony before the trial judge, and later before the court and jury, the defendant admitted that he told that story to the officials. Later in the evening he abandoned that story and in his testimony states: "I told them I had taken gasoline and poured it all over and put a paper on the hot plate, plugged it in and gone out the front door and got in my car and drove away."

After the trial court had ruled that these statements were admissible, the State's witnesses, Hill, Rausch, and Robinson, took the witness stand and testified before the jury regarding these statements and the circumstances under which they were given.

The trial court instructed the jury that no confession or admission is admissible in evidence unless made freely and voluntarily and not under the influence of promise or threat. After admitting the testimony regarding the defendant's statements, the court permitted the jury to pass upon the question of whether the statements were made voluntarily. He allowed counsel for the defendant wide latitude in examining and cross-examin-

ing witnesses concerning the facts and circumstances surrounding the making of the statements. Thus the trial court and the jury both passed upon the facts and circumstances and each determined that the statements were voluntary.

As we review the testimony surrounding the conditions under which the statements were made, we find that it is undisputed that after the defendant learned that he was wanted at the office of the chief of police, he talked to his attorney who advised him that it would be all right for him to go to the chief's office and answer questions. When he arrived at the office, the defendant was asked by Mr. Rausch to submit to a polygraph test. He refused until he could talk with his attorney. No polygraph test was given. It is also agreed that the defendant at first denied that he started the fire and that upon being pressed, he changed to the version that he accidentally started it while cleaning his razor with gasoline. According to the version of the State's witnesses, he was told that his story was untrue and urged to make a true statement. The Deputy State Fire Marshal testified that he, together with Mr. Newark, the Fire Chief of Grand Forks, talked to the defendant for a few minutes and then Newark left the room. The defendant still insisted that the fire was a result of an accident. When Robinson also started to leave, the defendant said: "Wait a minute, wait a minute, I will talk." Robinson then called in Mr. Rausch and the States Attorney and walked out of the room. According to the testimony of Rausch and the States Attorney, the defendant told them his final version of sprinkling the gasoline about and laying piece of paper on the hot plate.

According to the defendant, the final story of what happened was suggested to him by Fire Chief Newark who told him there would be no publicity and no jail, and that the defendant asked him what the fire chief wanted him to say, and the reply was "You took a can with oil in it and spread it all over the floors and set it on fire. I told Newark if that is all it takes to clear this thing, there will be no jail and publicity, I suppose that is what I did."

The States Attorney did not testify for the State but was

called by the defense and was asked to state what the defendant had told him about setting the fire prior to the defendant's arraignment. The States Attorney testified as follows: "That was in the office of the chief of police in the city hall, and Richard Rausch and myself were in that office with the defendant, and the defendant stated that he had left the house at 520 North Fourth Street at about 7:15 on the evening of August 6th, 1947; that just prior to leaving the house he had plugged in a hot plate in the kitchen of that house and put a newspaper from the top of the hot plate down to the floor. He further stated that he then spread gasoline around the house from the point of that newspaper to the various rooms, including the living room and bedroom, and that he blindly went around the house hurriedly setting fire; that the fire caught more quickly than he anticipated, and that it was necessary for him to hurry from the house; he stated that when he left there he then went up to Ernie's Body Shop, which is on North Fifth Street." The defendant thus elicited from the States Attorney substantially the same testimony that had been given by the witness Rausch regarding the defendant's final version of how he set the fire.

The statements made to the State's witnesses, Hill, Robinson, and Rausch, and the statement made to the States Attorney in he presence of Rausch, when coupled with other evidence as to the plaintiff's presence and opportunity to set the fire, and the photographs and testimony concerning the condition of the premises after the fire, warranted the jury in finding the defendant guilty of the crime charged. The fact that the evidence shows that the fire developed beyond an attempt and that there was an actual burning of some small portion of the house, does not militate against the sufficiency of the evidence as proof of the crime charged or create a variance that is fatal to the verdict and judgment.

The defendant argues that the defendant's various statements to the officers were involuntary and therefore not admissible in evidence, and that the court erred in ruling that they were admissible. The trial court first heard the testimony regarding

these statements in the absence of the jury. In submitting the Case to the jury he instructed them that:

"Some testimony has been offered in this case bearing upon the question of a confession by the defendant, and also some testimony has been offered tending to show the circumstances surrounding the giving of such alleged confession. The jury may and should consider all this testimony as bearing upon whether there was a confession and whether the confession, if made, should be considered by the jury.

No confession or admission of the defendant is admissible in evidence unless made freely and voluntarily and not under the influence of promise or threats. A confession forced from the mind by the flattery of hope or the torture of fear comes in so questionable a shape when it is to be considered as evidence of guilt that no credit ought to be given to it, and therefore is rejected.

The fact that a confession was procured by the employment of falsehood by an officer, detective, or other person does not alone exclude it. Nor does the employment of any artifice, deception, or fraud, exclude it if the artifice or fraud employed was not calculated to procure an untrue statement. Should the jury fail to find that the alleged confession was given by the defendant freely and voluntarily, that is, without a promise or threat by others sufficient to produce such a fear in his mind or hope of reward as would be fairly likely to make the defendant make a false and untrue confession, then you should wholly disregard such confession. However, should the jury believe there were no promises or threats made to the defendant which were fairly likely to produce an untrue confession, then you should consider the confession with all the other testimony in the case upon the question of guilt or innocence of the defendant."

This instruction was more favorable to the defendant than the situation warranted in that it included admissions. Most of the statements under consideration were in the nature of admissions rather than confessions, and the final statement is on the border line. Evidence bearing upon whether an admission was made voluntarily or involuntarily may be considered by the jury in determining the weight to be given to the admission. In State

v. Gibson, 69 ND 70, 284 NW 209, in the Syllabus by the Court, we said:

"A 'confession,' as the term is employed in criminal law, is an acknowledgment in express terms by a person of his guilt of a crime, while an admission is an acknowledgment, direct or implied, of some fact or circumstance, which in itself is insufficient to show guilt of a crime, but which is pertinent and tends in connection with the proof of other facts to prove such guilt.

In order to be admissible as evidence in a criminal action, a confession must be freely and voluntarily made.

An admission, not amounting to a confession, need not be proved to have been made freely and voluntarily in order to be admissible in evidence against the accused in a criminal action."

Under the procedure adopted here, both the trial court and the jury found that the statements in question were voluntarily made by the defendant. After a careful review of the facts and circumstances surrounding the making of these statements, we agree with the trial court and with the jury that they were admissible and properly considered.

All of the statements, with the exception of one made to Chief of Police Hill, were made prior to the defendant's arrest. After the defendant had been informed that the States Attorney wanted to talk to him at police headquarters, he consulted his attorney before complying with the request. That he knew of his right to have an attorney and to be advised by him is indicated by his refusal to take a polygraph test until he had seen his attorney. It does not appear that prior to or at the time of the defendant's final statement to Rausch and the States Attorney he was under restraint or threat of restraint on the part of any of the officials. During that time it does not appear that he expressed any desire to terminate the discussion or leave or contact his attorney. He said that several times he told the officers that he wanted an attorney, but it does not appear that he could not have immediately gotten in touch with his attorney had he so desired.

The defendant was placed under arrest between ten and ten-thirty o'clock on the evening of August 12, and placed in jail. After he was in his cell he told Chief of Police Hill why and how he set the fire. At the time of this conversation there appears

to have been no threat, inducement, or duress that would render the statement involuntary. The fact that he was under arrest does not render his statement involuntary, but may be considered by the court and jury in determining whether the statement was freely given. 20 Am Jur, Evidence, Section 498.

The defendant urges that the court erred in granting a continuance of the case and in denying a motion by the defendant for dismissal for lack of prosecution. The case first came before the district court on March 9, 1948, and the State asked for a continuance upon the ground that a material witness was ill and unable to testify. There is no question about her illness or the importance of her testimony which was given when the case was finally tried. After the States Attorney had stated the substance of the proposed testimony, counsel for defendant said: "We are not going to resist the motion for continuance. I assume all you can do in connection with this matter is place it at the foot of the calendar for this term and if it is not reached it will go over to the next term. That is the way the motion was put, as I understand it."

To which the States Attorney replied: "Yes. It is an uncertain matter as to when she will be in shape to testify, and we are not anxious for any further delay than we must have, and if it is possible for the case to come on at this term, that is naturally what we want, and the defendant is entitled to a speedy trial. But if she is unable to appear prior to the Judge dismissing the jury for this term, then, of course, the case would have to be continued to the next term." The court stated that the case would be placed at the foot of the calendar and that if the court dismissed the jury before it was tried, the case would be on trial at the next term.

On March 23, 1948, the trial court, being under the impression that there were no more jury cases to be tried at that term, dismissed the jury. Both the State and the defense were ready for trial at that time, but the court had not been so advised. The States Attorney promptly obtained an order of the court directed to the defendant to show cause why the court should not immediately rescind the order of adjournment of the jury term and recall the jury for further service. The defendant resisted

the recall of the jury and through the affidavit of his attorney stated that, if required to go to trial at that time, he would be greatly prejudiced both for financial reasons and due to the absence of a very necessary and material witness. The court denied the application of the State to recall the jury and directed that the case be continued over to the June 1948 regular term of the court.

When the case was called for trial on June 8, 1948, the defendant moved for a dismissal of the case pursuant to Section 29–1801 RCND 1943. That portion of this section upon which the defendant relies provides: "The court, unless good cause to the contrary is shown, must order a prosecution to be dismissed if: . . . a defendant whose trial has not been postponed upon his application is not brought to trial at the next term of the district court in which the information or indictment is triable after it is filed, if an information, or, after it is found, if an indictment."

The motion for dismissal, in effect, relates back to the continuance over the former term. When on March 9, the State sought a continuance upon the ground that one of its chief witnesses was ill, defendant's counsel did not resist the motion, and later when the State sought to have the jury recalled in order that the case might be tried, the defendant resisted the State's application, and upon being asked by the State if he was demanding trial, the defendant's counsel said: "We leave the matter entirely in the hands of the court."

Section 29–1802 RCND 1943 provides that: "If the defendant is not prosecuted or tried, as provided in section 29–1801, and sufficient reason therefor is shown, the court may order the action to be continued from term to term and in the meantime may discharge the defendant from custody, on his own undertaking or on an undertaking of bail for his appearance, to answer the charge at the time to which the action is continued." The defendant was released on bail the day following his arrest and does not appear to have been again taken into custody.

The application for continuance was not made in writing as the statute requires unless otherwise ordered by the court (Section 29–1908 RCND 1943) but at the time it was presented its

form was not questioned. It clearly appears the defendant acquiesced in what was done. "Acquiescence in error takes away the right of objecting to it." Section 31–1105 (7) RCND 1943. Re Morgan, 57 ND 763, 224 NW 209; Cook v. State, 54 ND 178, 208 NW 977. See also State v. Dinger, 51 ND 98, 199 NW 196. The trial court committed no error in denying defendant's motion to dismiss the case.

The defendant strenuously argues that the court erred in denying the attorney for defendant the opportunity to examine papers used by the witness Hill to refresh his memory. This situation arose on two occasions. The first was when Hill was called to the witness stand by the prosecution and asked questions concerning statements made to him by the defendant. The jury was excused and the court proceeded to hear the witnesses to determine the preliminary question of whether the statements made by the defendant were voluntary and should be permitted to go before the jury. Hill had testified that the defendant had voluntarily appeared at the police headquarters on the evening of August 7, 1947, which was the evening following that of the fire. The witness had testified that Captain Coss of the fire department and Sergeant Hadland of the police department were present. On cross-examination defendant's counsel asked if they were the only men present in addition to the defendant and the witness, to which the witness replied: "I think I have some notes on that. If you will allow me to check, I will see." Defendant's counsel then stated: "You may refresh your memory." After the witness had again stated that Coss and Hadland were present but would not say that they were the only ones, defendant's counsel asked to see the witness's notes. After a brief colloquy between the court and the respective attorneys, the court ruled that defendant's counsel was not entitled to see the notes. Counsel then proceeded with cross-examination and asked no further questions regarding the notes or what they showed. He did not renew his request to see them. It does not appear from the record that the witness had referred to the notes prior to cross-examination.

When the witness Hill again testified after the jury was recalled to the court room, it does not appear that any reference

was made to the notes during his direct examination. While he was being cross-examined as to who was present at the conversation between the defendant and Hill at the police station on the evening of August 7, 1947, the witness said: "I would like to refer to my notes again." And permission was given by defendant's counsel to do so. Counsel for the defendant then asked permission to see the notes. And after the witness had stated that he had not referred to the notes on direct examination, the request was denied by the court.

Where a witness has made memoranda concerning the facts pertaining to an event under circumstances that show that he had knowledge of the facts recorded and a clear recollection of them at the time the memoranda were made, he may be permitted, while on the witness stand, to refresh his recollection by referring to the memoranda and then testify from his recollection as thus refreshed. This is generally termed present recollection revived. A witness may also, under certain circumstances, use memoranda of a past recollection where he testifies that he once knew the facts and correctly recorded them, although the memoranda do not cause him to have a present independent recollection of the facts recorded. Golly v. Northland Elevator Company, 53 ND 564, 207 NW 438; Weigel v. Powers Elevator Company, 49 ND 867, 194 NW 113; Kinsey v. State, 49 Arizona 201, 65 Pac2d 1141, 125 ALR 3, followed by an extensive note at page 19; 58 Am Jur, Witnesses, Section 579; Jones Commentaries on Evidence, 2d Ed, Section 2378; Wigmore on Evidence, 3d Ed, Sections 734 and 758.

Where a witness is permitted to use a memorandum on direct examination, he may be cross-examined with reference to it and the cross-examiner must be permitted to inspect the memorandum to which the witness has referred. Dr. R. D. Eaton Chemical Company v. Doherty, 31 ND 175, 153 NW 966; Logan v. Freerks et al, 14 ND 127, 103 NW 426; Jones Commentaries on Evidence, 2d Ed, Section 2383, Section 2392; Wigmore on Evidence, 3d Ed, Section 762; 58 Am Jur, Witnesses, Section 601; Annotation in 125 ALR 192. The right to such inspection by the cross-examiner is generally held to be absolute and not discretionary on the part of the trial court. The reason has often

been referred to, as stated in Tibbetts v. Sternberg, 66 Barb 201: "The right of a party to protection against the introduction against him of false, forged or manufactured evidence, which he is not permitted to inspect, must not be invaded a hairsbreadth. It is too valuable to be trifled with, or to permit the court to enter into any calculation as to how far it may be encroached upon without injury to the party." It is also said in this same case: "Before the witness can be required to produce a paper, however, it must appear that he is using it as or in aid of his testimony. No lawyer would claim to be entitled to an inspection of every paper the witness might have in his custody, or even in his hand, while giving evidence."

The situation before us is different from that to which the general rule has usually been applied. The witness Hill does not appear to have referred to his notes on direct examination, nor does it appear to what extent, if at all, he had referred to his notes at any time prior to his cross-examination. He asked permission of the cross-examiner to refer to his notes in order to verify his recollection as to who was present during a certain conversation. Permission was granted and the cross-examiner then demanded and was denied permission to inspect the notes. Before ruling on the matter, the trial court asked the cross-examiner: "Is it your idea that he should turn the whole file over to you?" And counsel replied: "Anything in connection with this matter."

After the jury had been called back to the court room the witness Hill again testified to these same matters and made no reference to his notes in connection with his direct examination. On cross-examination he stated he would like to refer to his notes again and permission was given to do so by defendant's counsel who again asked permission to see the notes and was refused.

Notes were referred to for the first time on cross-examination that were part of a file in the possession of the witness and no inquiry was made to ascertain when or by whom the contents of the file or the notes were made, and demand was made for inspection of the entire file. We have found no case holding that under such circumstances the cross-examiner has the right

to inspect the file, nor do we believe that the trial court erred in refusing inspection. This was clearly an exploratory effort on the part of the defendant's counsel that was within the discretionary control of the trial court.

Before the court instructed the jury, defendant's counsel moved for a mistrial upon the ground of improper argument on the part of counsel for the State. No objection or stenographic record was made during the argument. In support of his motion for a mistrial defendant's attorney stated that counsel for the State in argument to the jury had said that officials who were witnesses were not only sworn to tell the truth but had taken other oaths in addition, and that the witnesses Moskau and Rausch were attorneys who would be subject to disbarment if they did not tell the truth. The Assistant States Attorney agreed that this was a fair statement of what he had said, and the court stated: "What he said was that they were under double oath, and that neither Moskau or Rausch were going to risk their livelihood which they get by practicing law by committing perjury upon the stand." The court denied the motion for mistrial.

The evidence shows that the witness Rausch, who testified for the State, was an assistant attorney general of the State and that the witness Moskau, who was called by the defendant, was the States Attorney of Grand Forks County. From this the jury knew they were both officials and attorneys at law. An attorney has a right to argue to the jury the credibility of witnesses as long as he confines that argument to the evidence and fair inferences that arise therefrom. He has no right to go beyond the record and state extraneous facts either in support of or in derogation of credibility. While the exact language of the Assistant States Attorney is not in the record, it appears that he exceeded the bounds of propriety in his remarks regarding the oaths of officials and attorneys at law.

"It does not follow that because erroneous, unwarranted, or even improper statements are made in the course of an argument in a criminal action, that the verdict must be set aside." State v. Gibson, 69 ND 70, 284 NW 209.

In order to avail himself of error resulting from improper argument and protect himself against it, the defendant must take proper steps. This matter is discussed in State v. Knudson, 21 ND 562, 132 NW 149, wherein the syllabus states: "Where the defendant alleges misconduct on the part of a state's attorney in his argument to the jury, and relies on the same as ground for reversal, he must first seasonably object thereto, and obtain a ruling from the trial court thereon, requesting the court to take action by reprimand to counsel, instructions to the jury, or other suitable action."

In this instance the defendant requested no action on the part of the court to minimize or relieve the effect of the remarks upon the jury. By a motion for mistrial he sought to have the trial terminated then and there, and the jury discharged. A mistrial is in legal effect no trial at all. State v. Young, 55 ND 194, 212 NW 857; Bolstad v. Paul Bunyan Oil Co., 215 Minn 166, 9 NW2d 346. It is a stringent step to be taken by the court upon the development of some fact or occurrence that renders further proceedings nugatory; as, for instance, when the judge is absent from the court room and out of hearing of the proceedings in a criminal case for a considerable time during the trial. See State v. Darrow, 56 ND 334, 217 NW 519. The trial court properly denied the defendant's motion for a mistrial. The court could have with propriety called the jury's attention to the statements in question and given a special instruction that they be disregarded. He did, however, give the standard instruction that: "The statements of counsel are not evidence. If during the trial or in the heat of argument counsel for either side have made statements not warranted by the evidence, you (will) wholly disregard such statements in arriving at your verdict." As we view the record of this controversy we are satisfied that the right of the defendant to a fair trial has not been transgressed and that he was not prejudiced by what occurred.

The defendant complains of the refusal of the trial court to give a cautionary instruction to the effect that greater care should be used in weighing the testimony of police officers, firemen, and other officials connected with law enforcement than

with ordinary witnesses because of the tendency of police officers to procure and remember with partiality evidence against the defendant. A similar contention was made in State v. Maresch, 75 ND 229, 27 NW2d 1, and we held that: "Where the testimony of certain police officers discloses no prejudice or bias and they were all officers holding permanent positions under the State, County or City government and none of them were special investigators or private detectives temporarily employed to solve the particular crime for which the defendant was being tried, it was not error to refuse to give the jury a cautionary instruction to the effect that greater care should be used in weighing the testimony of police officers because of their tendency in procuring and stating evidence against the defendant."

What we there said applies in this case. It does not appear that the officers in question were prejudiced or biased against the defendant. And the trial court properly refused to reflect upon their veracity by pointing out that their testimony should be considered with special caution.

The defendant has also specified error in the failure of the court to give a requested instruction on circumstantial evidence. However, the court did charge the jury with respect to circumstantial evidence in an instruction that is sufficient. The requested instruction was properly refused for another reason. It purports to state the law under which the jury may convict upon circumstantial evidence alone. Much of the evidence in this case is not circumstantial. Where there is sufficient direct evidence to sustain a conviction, it is not error for the court to refuse to instruct on circumstantial evidence. State v. Schneider, 53 ND 931, 208 NW 566; State v. Foster, 14 ND 561, 105 NW 938. This specification is also without merit.

The defendant complains of some of the trial court's rulings in connection with the admission or exclusion of evidence. Our examination of these rulings discloses no error.

Our review of the whole record brings us to the conclusion that the defendant had a fair trial. No prejudicial error was committed against him. He is therefore not entitled to a new trial. The order granting a new trial is reversed and the case

is remanded with instructions to the trial court to enter judgment upon the verdict.

NUESSLE, C. J., and CHRISTIANSON, GRIMSON and BURKE, JJ., concur.