1997 ND 56
**CITY OF WILLISTON, Plaintiff and Appellee,**

v.

**Glen D. HEGSTAD, Defendant and Appellant.**

**Criminal No. 960173.**

Supreme Court of North Dakota.

April 1, 1997.

Cathy Lynn Howe Schmitz, City Prosecutor, Williston, for plaintiff and appellee.

Thomas K. Schoppert, of Schoppert Law Firm, Minot, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Glen D. Hegstad appealed from a judgment of conviction for being in actual physical control of a motor vehicle with a blood alcohol concentration of at least ten one-hundredths of one percent, in violation of a Williston ordinance. Because the prosecuting attorney gave improper closing argument, we reverse and remand for a new trial.

[¶ 2] Mark McNamee, a Williston police officer, testified that on December 30, 1995, he was directed to investigate a vehicle parked in front of the Salvation Army building. When he arrived, he saw a parked van with the engine running and a man, Hegstad, slumped over the steering wheel. When McNamee got out of his patrol car, Dan Thorpe, another Williston police officer, arrived. Thorpe opened the passenger door of the van and shut off the engine. McNamee opened the driver's door and noticed "a strong odor of liquor." McNamee shook Hegstad to awaken him. When McNamee announced who he was, Hegstad "reached up his hand like to try to start the car up again." NcNamee had Hegstad get out of the vehicle and he took the key out of the ignition. Hegstad was unsteady on his feet and refused to perform roadside sobriety tests. McNamee arrested Hegstad and explained his rights:

> "I told him that he had the right to remain silent and anything he said could be used against him in a court of law. And he had the right to have an attorney, and

he had the right to have an attorney with him before he says anything."[1]

McNamee took Hegstad to a hospital, where a blood sample was drawn for chemical analysis. The analytical report showed a blood alcohol concentration of 0.25 percent by weight.[2]

[¶ 3] Hegstad testified he left the Pour Boys bar about 10:40 or 10:45 p.m. to go to his van to get some cigarettes. He entered the van on the driver's side, sat in the driver's seat, and reached over the steering wheel to get his cigarettes from the dash. He was in the van for five to ten seconds. As he was walking from the van back to Pour Boys, McNamee stopped him. McNamee asked Hegstad to prove it was his vehicle by getting in it and starting it. Hegstad refused. According to Hegstad, McNamee told him he was not cooperating and "said something to the effect that he might as well just go ahead and turn me in for trespassing or criminal mischief or something like that." Hegstad then put the key in the ignition, but the van would not start because of a clutch problem. He told McNamee he could not start it. McNamee "pointed at my keys and said, 'actual physical control' looking at the other police officer." Hegstad testified he said to McNamee, "You set me up." McNamee asked the other officer to retrieve the keys through the passenger door.

[¶ 4] Testifying in rebuttal, Thorpe corroborated McNamee's testimony. Thorpe testified Hegstad did not indicate he was set up, and neither he nor McNamee instructed Hegstad to get back in the car.

[¶ 5] In her closing argument to the jury, the prosecuting attorney said:

"This is Williston. This offense occurred in Williston on Main Street December 30th, 1995. This isn't L.A. He would have you believe that they set him up, and he stood there and didn't do anything. They told him to get in the car. Even though he has been in this route before, he got in the car and tried to start it. He didn't tell anybody—not the hospital per-

son, not the other police officer, nobody—until today."

Hegstad objected and requested a mistrial. The trial court overruled the objection and denied the motion for a mistrial.

[¶ 6] In her closing argument, the prosecuting attorney said to the jury that "McNamee's job was to tell the truth, as was Officer Thorpe." Hegstad moved to strike the statement and for a mistrial because the prosecutor was vouching for the police officers' credibility and invading the province of the jury. The trial court denied the motion.

[¶ 7] The jury returned a guilty verdict and the trial court entered a criminal judgment. On appeal, Hegstad contends the prosecuting attorney's improper arguments deprived him of a fair trial.

[¶ 8] This court recently addressed improper closing argument by a prosecutor:

"The control of closing arguments is largely within the discretion of the trial court, and we will not reverse on the ground that a prosecutor exceeded the scope of permissible closing argument unless a clear abuse of the trial court's discretion is shown."

*State v. Ash,* 526 N.W.2d 473, 481 (N.D.1995). "Argument by counsel must be confined to facts in evidence and the proper inferences that flow therefrom." *State v. Kaiser,* 417 N.W.2d 376, 379 (N.D.1987). "On appeal, this court 'must consider the probable effect the prosecutor's [inappropriate comments] would have on the jury's ability to judge the evidence fairly.'" *Grand Forks v. Cameron,* 435 N.W.2d 700, 704 (N.D.1989), *quoting United States v. Young,* 470 U.S. 1, 12, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1, 10 (1985). A prosecuting attorney's improper argument "may induce the jury to trust the government's view rather than its own judgment of the evidence when deliberating." *State v. Schimmel,* 409 N.W.2d 335, 343 (N.D.1987).

[¶ 9] A prosecutor's use of a defendant's post-arrest silence after receiving *Miranda* warnings to impeach the defendant's exculpatory story, told for the first time at trial, violates the defendant's right to due

---

1. See Miranda v. Arizona, *384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).*

2. Hegstad did not deny that he was intoxicated.

**94**

process. *Doyle v. Ohio,* 426 U.S. 610, 611, 96 S.Ct. 2240, 2241, 49 L.Ed.2d 91, 94 (1976). After a person has been arrested and given the *Miranda* warnings, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." 426 U.S. at 618, 96 S.Ct. at 2245, 49 L.Ed.2d at 98. *See also Wainwright v. Greenfield,* 474 U.S. 284, 289–95, 106 S.Ct. 634, 637–41, 88 L.Ed.2d 623, 629–32 (1986) (prosecutor's use, in closing argument, of the defendant's post-arrest silence as evidence of sanity violated his right to due process); *Fields v. Leapley,* 30 F.3d 986, 990 (8th Cir.1994) (prosecutor's use, in closing argument, of the defendant's silence after receiving *Miranda* warnings was a *Doyle* violation). However, if a defendant testifies to an exculpatory version of events he claims to have told the police upon arrest, the prosecution may use post-arrest silence to contradict the defendant's version. *Doyle v. Ohio,* 426 U.S. at 619–20 n. 11, 96 S.Ct. at 2245 n. 11, 49 L.Ed.2d at 98. If no governmental action induced a defendant to remain silent before his arrest and *Miranda* warning, a defendant's prearrest silence may be used to impeach his credibility if he testifies at trial. *Jenkins v. Anderson,* 447 U.S. 231, 238–240, 100 S.Ct. 2124, 2129–2130, 65 L.Ed.2d 86, 94–6 (1980).

■■■ [¶ 10] Because Hegstad's testimony he said to McNamee, "You set me up," was an exculpatory version of events Hegstad claimed to have told the police at the time of arrest, the prosecution was entitled to contradict it with a comment about silence. However, the prosecutor's reference to Hegstad's silence *after* he had received his *Miranda* warnings, "or more generally to [Hegstad's] failure to come forward with his version of events at any time before trial ... crossed the *Doyle* line." *Brecht v. Abrahamson,* 507 U.S. 619, 629–30, 113 S.Ct. 1710, 1717, 123 L.Ed.2d 353, 367–68 (1993). When the prosecutor argued to the jury Hegstad "didn't tell anybody—not the hospital person, not the other police officer, nobody—until today," the prosecuting attorney clearly used Hegstad's post-arrest silence after receiving *Miranda* warnings to impeach his exculpatory story, in violation of *Doyle v.*

*Ohio.* The City bears the burden of proving that a *Doyle* error was harmless beyond a reasonable doubt. *Brecht,* 507 U.S. at 628, 113 S.Ct. at 1717.

■■■ [¶ 11] The reliability of a witness's statements is a credibility issue in the exclusive province of the jury. *Westcott v. Crinklaw,* 68 F.3d 1073, 1077 (8th Cir.1995). In *U.S. v. Azure,* 801 F.2d 336 (8th Cir.1986), an expert on child abuse was allowed to testify the victim was believable. The court held "the trial court abused its discretion in allowing Dr. Ten Bensel to give his opinion as to the believability of Wendy's story." 801 F.2d at 341. In *State v. Goodroad,* 455 N.W.2d 591, 594 (S.D.1990), the prosecutor said of a plea-bargaining witness in closing argument:

> " 'when he cut a deal with the State that said I will stake my freedom on telling you the truth, I know that my plea bargain will die if you catch me lying or if anyone catches me lying and lays it out.' "

The court concluded the prosecutor's argument "was beyond prosecutorial bounds" and "the trial court should not have permitted the State to vouch for the credibility" of a witness testifying pursuant to a plea bargain. *Id.*

[¶ 12] This court has also held it is improper for a prosecuting attorney to vouch for the credibility of government witnesses in argument to the jury. In *State v. Braathen,* 77 N.D. 309, 43 N.W.2d 202, 215 (1950), the prosecutor argued to the jury that government "officials who were witnesses were not only sworn to tell the truth but had taken other oaths in addition, and .... were attorneys who would be subject to disbarment if they did not tell the truth." This court concluded the prosecuting attorney "exceeded the bounds of propriety in his remarks regarding the oaths of officials and attorneys at law." *Id.* "An attorney has a right to argue to the jury the credibility of witnesses as long as he confines that argument to the evidence and fair inferences that arise therefrom." *Id.*

■■■ [¶ 13] The prosecutor's argument the police officers' "job was to tell the truth" was not confined to the evidence. The jury may

have relied on the prosecutor's opinion about the officers' "job" and " 'surrender[ed] their own common sense in weighing testimony.' " *Azure,* 801 F.2d at 341, *quoting United States v. Barnard,* 490 F.2d 907, 912 (9th Cir.1973), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). The prosecutor's argument may have " 'so bolster[ed] [the officers'] testimony as artificially to increase its probative strength with the jury.' " *Azure,* 801 F.2d at 341, *quoting Homan v. United States,* 279 F.2d 767, 772 (8th Cir.), *cert. denied,* 364 U.S. 866, 81 S.Ct. 110, 5 L.Ed.2d 88 (1960). The prosecutor's argument was improper.

█ [¶ 14] The prosecutor's closing argument coupled improper comment on Hegstad's post-arrest silence after receiving *Miranda* warnings with improper argument the police officers' "job was to tell the truth." We conclude the trial court abused its discretion in overruling Hegstad's objections. The police officers in this case presented one story to the jury. Hegstad presented a very different story. Hegstad did not deny he was intoxicated. Hegstad admitted he entered his vehicle, sat on the driver's seat, and reached over the steering wheel. The only issue before the jury was which story to believe. Thus, the case turned on the jury's determination about the credibility of the witnesses. The prosecutor's improper closing argument put the government's thumb on the scale and may well have tipped the balance in its favor. We cannot say the errors were harmless beyond a reasonable doubt and we, therefore, reverse Hegstad's conviction.

[¶ 15] The judgment of conviction is reversed and the matter is remanded for a new trial.

[¶ 16] MESCHKE, MARING, NEUMANN, and SANDSTROM, JJ., concur.

