2008 ND 145

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Thomas Edward RIVET, Defendant and Appellant**

**State of North Dakota, Plaintiff and Appellee**

v.

**Louis Dominic Lugert, Defendant and Appellant.**

Nos. 20080008, 20080011.

Supreme Court of North Dakota.

July 21, 2008.

Reid A. Brady, Assistant State's Attorney, Fargo, ND, for plaintiff and appellee.

Mark T. Blumer, Valley City, ND, for defendant and appellant Thomas Edward Rivet.

Monty G. Mertz, Fargo, ND, for defendant and appellant Louis Dominic Lugert.

VANDE WALLE, Chief Justice.

[¶ 1] In these consolidated cases, Thomas Rivet appealed a criminal judgment entered after being found guilty by a jury of robbery and attempted murder and Louis Lugert appealed a criminal judgment entered after being found guilty by a jury of being an accomplice to attempted murder and an accomplice to robbery. We reverse the judgments against Rivet and Lugert and remand for a new trial.

## I.

[¶ 2] Appellants were accused of assaulting William Bluedog in February 2007 and tried together by a jury in September 2007. Bluedog testified that Lugert tried to choke him and Rivet stabbed him when he tried to resist Lugert. Appellants claim Rivet stabbed Bluedog to protect Lugert from an attack initiated by Bluedog.

## II.

[¶ 3] Appellants argue the prosecutor engaged in misconduct during closing and rebuttal arguments when he vouched for the credibility of Kelly Miller, Rivet's girlfriend and a State's witness.

The following comments by the prosecutor are at issue in this case:

> Kelly's testifying today I would submit is truthful on direct. She got scared. Mr. Fisher got up and he questioned her. She sees her ex-fiancé starring (sic) at her, on again, off again relationship. He's starring (sic) at her and suddenly her testimony changes. You saw how her testimony changed. She was being truthful on direct. As soon as Mr. Fisher put her under pressure, she began to lie.... Kelly's change of heart. She came in here, folks. She told the truth on direct. When Mr. Fisher got up and cross-examined her, she in that instant had to choose between love and fear and what she was getting in exchange for the testimony. She chose love and fear. She chose her ex-fiancé. You saw her. She had a difficult time testifying on direct. It was hard telling you what she did with her ex-fiancé and Mr. Lugert that night. It was hard. And when she was pressed, she changed.

[¶ 4] The control of closing arguments is largely within the discretion of the trial court, though arguments by counsel must be confined to facts in evidence and the proper inferences that flow therefrom. *City of Williston v. Hegstad*, 1997 ND 56, ¶ 8, 562 N.W.2d 91 (citation omitted). On appeal, this Court must consider the probable effect a prosecutor's inappropriate comments would have on the jury's ability to judge the evidence fairly. *Id.* (citation omitted). A prosecuting attorney's improper argument may induce the jury to trust the government's view rather than its own judgment of the evidence when deliberating. *Id.* An attorney has a right to argue to the jury the credibility of witnesses as long as he confines that argument to the evidence and fair inferences that arise therefrom. *Id.* at ¶ 12.

[¶ 5] A prosecutor's closing argument may properly draw reasonable conclusions and argue permissible inferences from the evidence, but a prosecutor may not create evidence by argument or by incorporating personal beliefs. *State v. Clark*, 2004 ND 85, ¶ 9, 678 N.W.2d 765. In *Clark*, this Court found comments about the nature of the evidence and an opinion that the defendant's version did not make sense to be permissible. *Id.* at ¶ 11. We also noted the jury instructions that "arguments of counsel are not evidence," and "[i]f counsel have made statements or expressed opinions to you not supported by the evidence, you should disregard those statements and opinions and be guided by the evidence in this case." *Id.* We concluded any possible prejudice was minimized by the instructions and any isolated statements suggesting the prosecutor incorporated his personal beliefs into closing argument or vouched for the credibility of witnesses was not obvious error. *Id.*

[¶ 6] Because there was no objection to the prosecutor's argument at trial, we will not reverse unless it was an obvious error affecting a defendant's substantial rights. *Hawes v. N.D. Dept. of Transp.*, 2007 ND 177, ¶ 10, 741 N.W.2d 202. We may notice a claimed error not brought to the district court's attention if there was an error that is plain and affects substantial rights. *Id.* We exercise our authority to notice obvious error cautiously and only in exceptional circumstances where the defendant has suffered serious injustice. *Id.* In deciding if there is obvious error, we consider the probable effect of the prosecutor's improper comments on the jury's ability to judge the evidence fairly. *Id.* The error should be corrected where it seriously affects the fairness, integrity or public reputation of judicial proceedings. *Id.*

[¶ 7]  The comments regarding Miller's possible reason for altering her story were a reasonable conclusion and permissible inference to be drawn from the evidence presented to the jury.  The jury heard testimony of Miller's present on and off relationship with Rivet, as well as observed her hesitation in testifying against him.  Miller also testified to lying to investigating officers after her arrest regarding what occurred the night of the incident.  Evidence was presented showing Rivet and Miller were still in contact, including phone calls and letters discussing the case.  The prosecutor did not vouch for Miller but rather, based on the evidence and the manner in which it was adduced, drew a permissible inference regarding why Miller changed her testimony on the stand.  Further, jury instructions similar to those given in the *Clark* case were provided, minimizing any possible prejudice resulting from the statements.  We conclude the prosecutor's comments, if error, were· not obvious error.

### III.

■  [¶ 8]  Appellants argue the prosecutor improperly commented on Rivet's post-arrest and post-Miranda silence.  *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).  During direct examination, Rivet stated that while running from the scene, he thought, "Let me go back and clear my name."  He again stated during cross-examination that he wanted to go back to clear his name and "I want to clear my name but I hear dogs and I panic."  Shortly thereafter, the following questioning took place:

Q.  You had an opportunity to clear your name, didn't you?

A.  Yes.

Q.  You were picked up by police?

A.  Yes.

Q.  And you were given an opportunity to give a statement, weren't you?

A.  Yes.

Q.  Did you clear your name at that time?

A.  I was informed through many years of experience and police office (sic) movies and everything else get a lawyer first.  You talk directly to a lawyer.  You do not talk to anybody else.  You do not talk to press.  You go directly with a lawyer.  Let the lawyer clear your name.

Q.  Well, Mr. Rivet, that's not how I recall it.  You recall having an interview with Mr. Nelson, don't you?

A.  And I said I went to South Fargo Wal–Mart—or, excuse me, South Fargo by McDonalds.  I don't remember anything about the north and I want a lawyer.  That consisted of my statement.  I want a lawyer.

Q.  Perhaps, Mr. Rivet, if we play the interview for you you'll recall what you said to Mr. Nelson.

(State's Exhibit 30 was played for the jury.)

Q.  Mr. Rivet, it didn't sound like you took the opportunity to clear your name at that time.  As a matter of fact, it sounded like you were trying to create an alibi by saying you were up north.

A.  If that's the way you want to look at it, sir.

Exhibit 30, the audio recording of the police interrogation of Rivet, ended with Rivet requesting an attorney.  Appellants did not object to the questions.

■      [¶ 9]  It is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation.  *State v. Schneider*, 270 N.W.2d 787, 792 (N.D. 1978).  The prosecution may not, therefore, use at trial the fact that a defendant stood mute or claimed this privilege in the face of accusation.  *Id.* (citation omitted).

Improper comments on a defendant's right to remain silent is constitutional error which may be reviewed on appeal even though not objected to at the time of trial. *Id.*

[¶ 10] A prosecutor's improper use of a defendant's post-arrest silence is an error for which the harmless error analysis is appropriate. *State v. Janda,* 397 N.W.2d 59, 66 (N.D.1986). Reviewing courts must ignore harmless errors, including most constitutional violations. *Id.* A harmless error is "[a]ny error, defect, irregularity or variance that does not affect substantial rights" and "must be disregarded." N.D.R.Crim.P. 52(a). "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Schneider,* at 792 (citing *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). To determine the effect of the error on a defendant's constitutional rights we must consider the entire record and the probable effect of the actions alleged to be error in light of all the evidence. *Id.* The beneficiary of a constitutional error has the heavy burden of proving beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. *Id.*

[¶ 11] The State argues its comments were permissible impeachment. A party can attack a witness's credibility by impeachment. N.D.R.Ev. 607. However, a prosecutor's use of a defendant's post-arrest silence after receiving Miranda warnings to impeach a defendant's exculpatory story, told for the first time at trial, violates the defendant's right to due process. *Hegstad,* at ¶ 9. After a person has been arrested and given the Miranda warnings, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.* (citations

omitted). However, if a defendant testifies to an exculpatory version of events he claims to have told the police upon arrest, the prosecution may use post-arrest silence to contradict the defendant's version. *Id.*

[¶ 12] Where a defendant did not remain silent after his arrest, the prosecutor's questions are a valid means of impeaching his testimony. *State v. Burke,* 2000 ND 25, ¶ 30, 606 N.W.2d 108. Rule 613, N.D.R.Ev., permits using a witness's previous statements to impeach the witness's testimony. *See also State v. Demery,* 331 N.W.2d 7, 11 (N.D.1983) (stating "[i]t is the established rule in this State that a prior inconsistent statement may be used to impeach a witness").

[¶ 13] The initial comment by the prosecutor on Rivet's pre-arrest failure to clear his name may be a permissible comment, given Rivet's prior inconsistent statements regarding his desire to clear his name. Further, the comment focused on Rivet's opportunity to clear his name prior to being arrested, on the night of the stabbing.

[¶ 14] Although the State argues the evidence shows Rivet gave statements to Nelson before invoking his right to an attorney and the cross-examination focused on Rivet's prior statements as "trying to create an alibi by saying you were up north," the line of questioning, quoted at length above, followed directly after the recording of the police interview was played before the jury. That recording ended with Rivet's request for an attorney. Immediately after that followed the comment that Rivet did not take the opportunity to clear his name at that time. The quoted line of questioning focused on the opportunity Rivet had to clear his name once he was arrested, the day after the stabbing. The State draws too fine a line to say the comment applies only to the statements made to the police before Rivet

requested an attorney and the interview ceased but not to the fact Rivet requested an attorney when that is the last statement on the recording heard by the jury. This is clearly a comment on the fact Rivet remained silent when given the opportunity to give a statement to the police and, in the sequence of the presentation of the evidence, is an impermissible comment on the fact Rivet claimed his privilege to remain silent when accused by the police. Finally, the State's argument that the prosecutor was impeaching Rivet's claim of self-defense fails under *Hegstad* because Rivet had not made prior statements inconsistent with his claim of self-defense and his claim of self-defense was an exculpatory story told for the first time at trial.

[¶ 15] Because the State is the beneficiary of the constitutional error, it has the heavy burden of proving beyond a reasonable doubt the comments on Rivet's post-arrest silence did not contribute to the verdict obtained. Allowing the jury to hear Rivet's request for an attorney, coupled with the immediate comment by the prosecutor that Rivet failed to use an opportunity to clear his name, likely damaged his credibility in the eyes of the jury. We are not convinced beyond a reasonable doubt the comments on Rivet's post-arrest silence did not contribute to the guilty verdict. We therefore reverse the judgment against Rivet and remand for a new trial.

[¶ 16] While it is clear we must reverse Rivet's judgment due to the prosecutor's comments, Lugert argues his judgment should be reversed as well. He asserts the credibility of himself and Rivet was extremely important to his case and the improper damage to Rivet's credibility by the prosecutor's comments on Rivet's right to remain silent also damaged Lugert's case and his own credibility. The issue of how an improper comment on a defendant's right to remain silent at trial will affect a co-defendant's conviction is a case of first impression in North Dakota. The limited case law in other jurisdictions is divided on whether reversal of a defendant's conviction necessarily entails reversal of a co-defendant's conviction in these situations.

[¶ 17] In *Harper v. State,* 151 So.2d 881 (Fla.Dist.Ct.App.1963), the court determined a prosecutor's comments on a co-defendant's failure to testify was fundamental error and warranted a new trial for the defendant. The court explained, "Certainly the direct comment that a co-defendant failed to take the stand in the instant case reasonably and logically, though indirectly, called to the attention of the jury the [defendant's] failure to testify" and noted a prosecutor could not by indirection do that which he could not do directly. *Id.* at 883. However, a comment on a defendant's right to remain silent was held to have no effect upon a co-defendant and his right to remain silent in *Travieso v. State,* 480 So.2d 100, 103 (Fla.Dist.Ct.App.1986). The court did not analyze or explain the rationale behind its holding.

[¶ 18] No comment was made on either Lugert's or Rivet's failure to testify at trial as in *Harper,* and in *Travieso* the court held the comment had no affect on Travieso's co-defendant and his right to remain silent. Here, both Rivet and Lugert gave the same explanation for what occurred in Bluedog's apartment on the night in question. Their credibility was crucial in convincing the jury to believe their version of the facts. Lugert, as a co-defendant with an identical version of what occurred that night, was relying on Rivet's credibility. Once Rivet's credibility was improperly damaged by the prosecutor's comments, the credibility of Lugert's version of the story was likewise adversely impacted. Separate informations were issued for each Appellant. However, the trial court

apparently ordered that they be tried together as allowed under N.D.R.Crim.P. 13. The Appellants were tied to similar charges through the same evidence. The State benefitted from having one piece of evidence affect both defendants and one error also necessarily affected both defendants. Although the right to remain silent is a personal constitutional right, under these circumstances we conclude the prosecutor's comments on Rivet's right to remain silent directly affected Lugert's case and we therefore reverse the judgment against Lugert as well.

## IV.

[¶ 19] Appellants argue the evidence was insufficient to support their convictions. Because we reverse the judgments against Appellants due to the prosecutor's comments on Rivet's right to remain silent, we do not need to address this issue.

## V.

[¶ 20] We reverse the judgments against Rivet and Lugert and remand for a new trial.

[¶ 21] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.