480 So.2d 100 (1985)
Victor TRAVIESO and Manuel Esteban Perez, Appellants,
v.
STATE of Florida, Appellee.
Nos. 83-245, 83-430.
District Court of Appeal of Florida, Fourth District.
July 10, 1985.
As Clarified on Denial of Rehearing January 15, 1986.
*101 Michael Blacker, Coconut Grove, and Dorothy M. Walker of Law Office of Walker & Vetrick, Belle Glade, for appellants-Travieso and Perez.
Jim Smith, Atty. Gen., Tallahassee, and Richard G. Bartmon, Robert L. Teitler and Sharon Lee Stedman, Asst. Attys. Gen., West Palm Beach, for appellee.
DOWNEY, Judge.
Victor Travieso and Manuel Esteban Perez appeal judgments adjudicating them guilty of trafficking in cannabis in excess of one hundred pounds and sentences of thirty and twenty years in prison, respectively, together with fines of $25,000. Their appeals have been consolidated but separately briefed.
On February 6, 1982, an airplane crash-landed on Camayan Farms in Port Mayaca, Martin County, Florida. The sheriff's office was notified and, upon investigation of the scene, found over two hundred pounds of marijuana in or about the plane. Detective Glenn Lockwood led the investigation and, in due course, he determined that the plane was owned by Bassem Bourham and piloted on the fateful flight by Wayne LaChance. After Bourham and LaChance were arrested, both gave statements inculpating Travieso and Perez. Based upon those statements and other information learned in the investigation, Lockwood obtained warrants authorizing the search of Travieso's office in West Palm Beach, where Travieso allegedly operated a sugar cane trucking business, and the search of the Laborata Grocery Store in Stuart, operated by Perez and his family.
Lockwood appeared at Travieso's office to execute the search warrant but found no one there. He broke into the office, which contained some furniture, including a couch, a desk, cabinets and a telephone. There was a great deal of paperwork in the office among which Lockwood found what he determined to be smuggling lists. The telephone had been disconnected and the electric power was turned off. In the fenced-in yard Lockwood observed a number of old trucks and a van.
Execution of the search warrant at the Laborata Grocery Store netted certain notes, telephone bills and receipts found in a filing cabinet and a briefcase. Telephone numbers taken from some of the documentation found in the searches of the two locations reflected calls between Laborata Grocery and Travieso's office and others, which, when pieced together, confirmed an ongoing plan for smuggling contraband into the United States; a plan that involved Travieso, Perez, LaChance, and Bourham, among others.

TRAVIESO'S APPEAL
Only two points are raised by this appeal, both of which we hold present reversible error.
In his first point, Travieso suggests the trial court erred in denying his motion for mistrial when a witness for the prosecution stated that Travieso never gave the police a statement. This witness was Detective Lockwood and the testimony occurred during the cross-examination of Lockwood by counsel for Perez. Counsel was trying to discredit LaChance, the pilot who had *102 "made a deal" and testified for the prosecution. Counsel asked Lockwood if he had any information, other than what LaChance had told him, that Travieso was present at the scene of the plane crash. Lockwood answered, "No, he didn't give me a statement." Counsel said, "I'm sorry?" and Lockwood said, "He never gave me a statement." Objection and motion for mistrial was made by counsel for both defendants.
The state has strenuously tried to characterize this statement as anything but a comment on Travieso's right to remain silent, but we are unimpressed with the suggestions and arguments presented in that regard. Lockwood was a prosecution witness and the question called for a negative answer; it did not invite the response as made. The cases are legion condemning such testimony as reversible error. It should suffice to cite our most recent utterance on the subject, Thornton v. State, 442 So.2d 1104 (Fla. 4th DCA 1983).
In his second point, Travieso contends the trial court erred in finding that Travieso did not have standing to contest the search and seizure conducted at his office in West Palm Beach.
Travieso filed a motion to suppress the evidence seized at his office pursuant to the search warrant executed by Lockwood. At the suppression hearing, after several hours of evidence was presented, the trial judge ruled that Travieso did not have standing to suppress the evidence because he had no expectation of privacy in the premises. The court felt that, while Travieso had some proprietary rights in the premises at one time, he had effectively abandoned them by the time the search and seizure took place because he had not paid the rent, the power and telephone had been cut off and "he had nothing of his own left there except a broken down vehicle."
While we recognize that the findings of the trial judge on a motion to suppress must be accepted by this court if the record reveals evidence to support the findings, State v. Battleman, 374 So.2d 636 (Fla. 3d DCA 1979), we hold the evidence at the hearing in this case, taken as a whole, does not support a finding that Travieso lacked standing. The premises in question consisted of an office and fenced-in yard for parking vehicles. Travieso's cousin Sanchez had originally leased the property himself to operate a woodworking business, which failed. Sanchez then sublet the property to Travieso to operate a cane hauling business. Travieso operated such a business on the premises from early 1981 through February 1982. This much the trial judge acknowledged. However, the evidence revealed that Travieso leased the property on a yearly basis, paying rent by the month. The active cane hauling season ended the early part of May and the search took place on May 11th. The phone and electric power bills were paid by Sanchez and Travieso reimbursed him therefor. While the rent had not been paid for May of 1982, Sanchez testified he learned of Travieso's arrest when he went to collect the May rent. Furthermore, the office contained furniture and business papers belonging to Travieso and the yard contained several old trucks and a van belonging to Travieso. Thus, except for the temporary termination of the power and phone during a period when the cane hauling operation was over, and the fact that no one was present at noon on the day Lockwood appeared to execute the search warrant, there is no evidence of abandonment. Therefore, we are compelled to hold that Travieso had standing to pursue his expectation of privacy via the motion to suppress and it was error to prevent him from doing so.
For the foregoing reasons, we reverse the judgment and sentence as to Travieso and remand the cause for a new trial.

PEREZ'S APPEAL
Perez presents six points for reversal. Point I, which attacks the affidavit and search warrant issued for the search of Laborata Grocery, and Point VI, which contends Perez's motion for a judgment of acquittal should have been granted, are without merit. Furthermore, regarding the search of the Volvo car, Perez had not properly preserved that point for appellate review because the evidence was admitted *103 at trial without objection on fourth amendment grounds.
In Point II, Perez contends he was deprived of a fair trial when the jury was informed during opening statement by counsel for Travieso that the pilot LaChance, who had been charged under a separate information, had made a deal with the state to testify. Perez contends this was objectionable as being tantamount to informing the jury in a joint trial that one of the defendants had a prior record. Specifically, Perez objected to the following statement:
Where did you go? I ran away from the State of Florida, I went to Georgia the next state up. I stayed away for ... plane crash is on the 6th of February, stayed away until April 2nd, it's about 69 days ... 80 days something like that. What happened? Well, I came back because I heard they were looking for me. What happened when you came back? Well, I made a deal, I made a deal with the state. What did you do? The consideration was 
MR. SAYLOR: Judge, I  I'm sorry to object during  during opening statement but I have  I raised this point of law earlier and I just want to object to it at this point.
MR. BLACKER: I won't go into the deal counselor.
THE COURT: Of  of course I don't know what the objection is, but apparently he says he's not gonna' do what you don't want him to do so... .
It is well settled under Florida law that the state may not show that a co-defendant or an accomplice pleaded guilty or was convicted because it is not relevant and it may have a very prejudicial effect upon the determination of the guilt or innocence of the defendant. Parker v. State, 456 So.2d 436 (fla. 1984); Loudd v. State, 358 So.2d 188 (Fla. 4th DCA), cert. denied 365 So.2d 713 (Fla. 1978). However, each case must be examined to determine whether the error has been preserved and, if preserved, whether the information was so prejudicial as to require reversal. Loudd, 358 So.2d at 190.
It is also the rule that objections must be made with sufficient specificity to apprise the trial court of the potential error and to preserve the point for appellate review. Ferguson v. State, 417 So.2d 639 (Fla. 1982); Clark v. State, 363 So.2d 331 (Fla. 1978); Castor v. State, 365 So.2d 701 (Fla. 1978); It is evident by the court's statement that it "did not know what the objection is" that the appellant failed to make the objection with sufficient specificity. Therefore, appellant's general objection in this case fails to meet the above requirement to preserve the issue for appellate review.
Furthermore, it appears that such error, if any, was cured by counsel for Travieso's response to appellant's objection that he "would not go into the deal" and appellant's apparent agreement demonstrated by his failure to make any further objections.
Next, Perez suggests that error was committed in denying his motion for mistrial, made as a result of the prosecutor and counsel for Travieso telling the jury, during opening statement, details about the involvement of Bassem Bourham as though Bourham were going to be a witness in the case. As it turned out, no one called Bourham as a witness. However, we find no fault with the reference made by counsel during opening statement while outlining the case as counsel anticipated it would unfold through the various witnesses. There is no showing that it was known Bourham would not testify.
As part of his complaint under this point, Perez also contends a response by Lockwood made Bourham a phantom witness not subject to cross-examination in violation of Perez's right to confrontation. The response occurred as Lockwood was being cross-examined by Perez. Counsel asked Lockwood if he was still going to recommend probation for LaChance, considering the fact that LaChance was an admitted smuggler, cocaine user and perjurer. Lockwood said yes because Lockwood had given him the facts in the case the way they were. Counsel pressed a little further and asked: "He gave his story *104 to you, did he not?" Lockwood answered: "And the story matched Bassem Bourham's story." Perez can hardly complain because it appears he invited the answer. In addition, his objection in the trial court was based upon an alleged Richardson violation and therefore was not adequately preserved for review.
Perez attempts, in one of his points, to take advantage of the error committed when Lockwood testified that Travieso had never given him a statement, which is one of the grounds for reversal in Travieso's case. We reject this argument and hold that Lockwood's comment had no effect upon Perez and his right to remain silent.
The final point made by Perez is that the trial court erred in instructing the jury on conspiracy. It is argued that, since the conspiracy was not charged here, such instruction had the effect of varying the charge contained in the information. Once again, we reject that argument because it is not necessary to have charged a conspiracy as a substantive crime in order to give the instruction. Where evidence of a conspiracy is relevant to prove a charged substantive offense, it is proper to give an instruction relative to a conspiracy between the defendant and others, although the defendant is not charged with the substantive crime of conspiracy. Boyd v. State, 389 So.2d 642 (Fla. 2d DCA 1980). A full treatment of this question is presented in Boyd, to which we will defer rather than further prolong this opinion.
Having treated the necessary points raised by Perez, we affirm the judgment and sentence as to him.
HERSEY, C.J., and WALDEN, J., concur.

ON PETITION FOR REHEARING
PER CURIAM.
This court finds the state and Perez's petitions for rehearing to be without merit. However, we believe a clarification of the portion of our opinion concerning the comment on Travieso's right to remain silent wherein we stated: "[t]he cases are legion condemning such testimony as reversible error," is necessary. We acknowledge the recent supreme court opinion of State v. Marshall, 476 So.2d 150 (Fla. 1985), which holds that comments on the defendant's failure to testify should be evaluated in light of the harmless error doctrine. However, since we also reversed the judgment and sentence as to Travieso and remanded for a new trial on the basis that "Travieso had standing to pursue his expectation of privacy via the motion to suppress", it is impossible to determine from this record what the evidence will be against Travieso. Therefore, we find that this case is inappropriate for consideration of the harmless error doctrine.
Accordingly, the petitions for rehearing filed in these two cases are hereby denied.
HERSEY, C.J., and DOWNEY and WALDEN, JJ., concur.