482 So.2d 367 (1985)
Max GITMAN, Appellant,
v.
STATE of Florida, Appellee.
H. Doug BENTLEY, Appellant,
v.
STATE OF Florida, Appellee.
Nos. 83-2324, 83-2350.
District Court of Appeal of Florida, Fourth District.
July 24, 1985.
On Petition for Rehearing February 26, 1986.
*368 Joel Hirschorn, P.A., Miami, for appellant-Gitman.
Hilliard Moldof, Fort Lauderdale, for appellant-Bentley.
Jim Smith, Atty. Gen., Tallahassee, and Sarah B. Mayer, Asst. Atty. Gen., West Palm Beach, for appellee.
*369 DOWNEY, Judge.
In separate appeals Gitman and Bentley seek reversal of judgments of guilty of five counts of grand theft and one count of a scheme to defraud entered pursuant to jury verdicts.
Appellants owned a corporation, Central Credit Clearing House, which operated a commercial collection agency under the name of Ames, Manning & Brown (AM & B). The company solicited businesses with delinquent accounts to turn those accounts over to AM & B for collection, for which AM & B would charge a percentage of the collection depending upon various factors. The agency began small but eventually grew to the point where it was collecting $50,000 per week from debtors of its clients. Apparently based upon complaints from certain AM & B clients, the Broward County State Attorney's Office commenced an investigation into AM & B's practices, which eventually resulted in the filing of an amended information charging AM & B, Gitman, Bentley, and a third individual, Frisco, with twenty-six counts of grand theft and one count of scheme to defraud. Frisco negotiated a plea just prior to trial. In addition, some of the grand theft counts were nolle prossed just before trial and motions for judgment of acquittal were granted as to others at the conclusion of the state's case. The jury found all remaining defendants guilty of five counts of grand theft involving one AM & B client and guilty of a scheme to defraud regarding ten or more other clients. Gitman alone was found guilty of grand theft as to a second AM & B client.
Gitman poses seven points on appeal, and Bentley poses eight. AM & B has not appealed. For purposes of this opinion the points are virtually identical, except as they pertain to the respective sentences and the departure from the sentencing guidelines.
We would dispose of Gitman's and Bentley's respective points II and VII by simply saying we have considered the attack upon the affidavit and search warrant and found no error demonstrated. Regarding the prosecutor's question to a prospective juror whether the codefendant, Frisco's, having pleaded guilty and becoming a witness for the state would disturb that prospective juror, once again no reversible error is found. The question had no impact on the remaining defendants' theories of defense; and the court's cautionary instruction explaining that a codefendant's guilt was not to be considered in determining the defendant's guilt was adequate to remove any problem created by the question. Bocanegra v. State, 303 So.2d 429 (Fla. 2d DCA 1974), cert. dismissed, 308 So.2d 111 (Fla. 1975).
Next, we consider the alleged error in denying appellants' motions for judgment of acquittal on the counts on which they were convicted. We must concede that counsel for appellants, in their arguments to the jury, in their briefs, and at oral argument before this court, were most persuasive in the picture of innocence they portrayed on behalf of their clients. Had the jury been persuaded to find appellants not guilty, it would have been no surprise. However, the realities of the case are that the jury was not fully convinced that all of the charges lacked sufficient evidence to sustain them. Our task then is simply to examine the record to see if there is substantial competent evidence to support the verdicts of guilty in the counts of grand theft and count of scheme to defraud. Such examination reflects that during the three week trial the state adduced evidence of a collection agency controlled by appellants that engaged in a scheme constituting a systematic ongoing course of conduct to defraud some of their clients by false or fraudulent pretenses and as a result they were convicted of obtaining money from one such client (two clients insofar as Gitman is concerned) contrary to law. Furthermore, the evidence supports a finding that appellants knowingly obtained or used (or endeavored to use) the property of their clients with intent to deprive such clients of their property or the benefits thereof.
A number of ex-employees testified to being schooled and instructed in procedures that either delayed a client's receipt *370 of its money after collection from the debtor until the client had dunned the agency at least three times, or sent proof that the debtor had paid in the form of cancelled checks, or precluded the client from ever receiving all or portions of the collection. On this evidence the jury properly found that the agency, under appellants' direction and control, intentionally collected overages which it did not remit to the client. One form of overage came about by the agency's advising the debtor he owed more than, in fact, he did; then upon payment from the debtor, AM & B retained the overage unbeknown to the creditor-client. Another ruse used was to persuade the client, for example, to settle a debt for half the amount due and upon collection of the full debt retain the difference between the full amount paid and the amount the client agreed to settle for, again without the client's knowledge.
The grand theft evidence related to two clients. In one case, the client learned by accident that the debtor had made full payment of $1,200 in installments over a period of approximately six months. Several months after the final payment, when the debtor attempted to reestablish credit with the client, they both learned the agency had never acknowledged payment by the debtor nor paid any money to the client. Furthermore, the agency never did pay the $1,200 over to the client. The defense: one of the agency employees took some records when he left and this client was one of them. Another client for whom the agency collected an account testified he never was able to obtain payment even though the agency record showed it had been collected. Once again, theft of the record was appellants' excuse.
Finally, there was evidence that, after their arrest, statements were obtained from appellants that could constitute admissions if the jury so viewed them. Bentley was reported by a witness to have said that the charges against him were true. Another witness stated that Gitman acknowledged he was not fully remitting collections to clients.
Appellants had some explanation for all of the incriminating statements. In addition, counsel suggests many of the witnesses were impeached. To which we say, both the explanations and the effect of the perceived impeachment were for the jury to consider. Thus, we find no error in the denial of the motions of judgment of acquittal.
After the jury had retired to consider their verdict, they returned with a request that they be given a copy of the jury instructions or that the court "read the specific laws to verify the collective recollection of the jury." The court engaged in a colloquy with the jury foreman to clarify the request. The court asked exactly what portion of the laws the jury was referring to. The foreman answered, "The specific statutes that were included in the instructions and the wording of the statutes." To which the judge said, "You mean the laws giving ... * * * * alleged crimes?" and the foreman answered yes. After a discussion with counsel, during which appellants requested the court to give the definition of specific intent again as well as the statutory elements of the offenses, the court reinstructed the jury on the statutory elements only.
Under Hedges v. State, 172 So.2d 824 (Fla. 1965), and similar cases, it is reversible error for a trial court in a first degree murder prosecution to reinstruct only on the degrees of homicide without reinstructing on justifiable and excusable homicide. The reason it is error is that it is impossible to define one degree of homicide, manslaughter, without instructing on justifiable and excusable homicide, since the statute that defines manslaughter specifically excludes from its ambit justifiable and excusable homicide. Here, it was imperative for the trial court to reinstruct the jury on the elements of the offenses charged. Thus, the question before us is whether it is impossible to define either the offense of theft or the offense of scheme to defraud without instructing on the definition of "specific intent."
*371 Section 812.014(1), Florida Statutes (1979), sets forth the elements of theft, i.e., defines theft, as follows: knowingly obtaining or using or endeavoring to obtain or to use, the property of another, with intent (a) to deprive the other person of a right to the property or benefit therefrom or (b) to appropriate the property to his own use or to the use of any person not entitled thereto.
Section 817.035, Florida Statutes (1979), provides that the felony of a scheme to defraud is the engaging in a systematic, ongoing course of conduct, with the intent to defraud more than one person or to obtain property from more than one person by false or fraudulent pretenses, representations, or promises, actually obtaining property from one or more of such persons, and in addition the state must prove beyond and to the exclusion of every reasonable doubt the identity of at least one person from whom the defendants so obtained property, but it shall not be necessary to prove the identity of any intended victim.
In the present case, in reinstructing the jury, the court tracked the elements set forth in the theft statute, section 812.014(1), Florida Statutes (1979), and the scheme to defraud statute, section 817.035(1) and (3), Florida Statutes (1979). Thus, those reinstructions answered the jury's request and apprised them of all the elements of the offenses charged including the intent it was necessary for the defendants to have had in order for them to be found guilty. Therefore, reinstruction on the definition of "specific intent" was not mandated. See Cheatham v. State, 346 So.2d 1218 (Fla. 3d DCA 1977).
Another argument requiring discussion is the contention that appellants' convictions of theft and of a scheme to defraud cannot be upheld together because all the elements of the grand theft convictions were included within the evidence elicited to establish the scheme to defraud, and therefore the convictions and sentences for the grand theft counts are barred by considerations of double jeopardy.
We note at the outset that, with respect to cumulative sentences imposed in a single trial are concerned, the Double Jeopardy Clause "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Thus, the question presented by this argument is whether the circuit court in imposing concurrent sentences for the offenses of grand theft and a scheme to defraud imposed upon the appellants punishments greater than the legislature intended.
In treating this general area of the law, the Supreme Court of Florida in State v. Gibson, 452 So.2d 553 (Fla. 1984), recognized that section 775.021(4), Florida Statutes (1977), mandates separate prosecutions and punishments whenever an act or group or series of acts violates more than one statutory provision, so long as punishment is not imposed for a lesser offense that is included in an offense of which the defendant has been found guilty. Thus, in Gibson separate punishments were properly imposed for the offense of robbery while armed and use or display of a firearm, even though those offenses arose from a single criminal transaction since the use or display of a firearm in committing a felony is not a lesser included offense of robbery while armed. Therefore, the exception in section 775.021(4) for lesser included offenses was not intended to preclude separate prosecution and punishment of separate statutory crimes arising in the same course of events or from a single act. 452 So.2d at 558.
As indicated above, each charge of grand theft was proved upon a showing of an endeavor to obtain the money of a named client with unlawful intent; a completed act was not necessary. However, the offense of a scheme to defraud includes the element of actually obtaining property from one of the ten or more persons the defendant planned to defraud. Similarly, the latter offense contains the element of a plan involving ten or more persons, while grand theft contains the element of intent as to only one person. It is thus clear that *372 each offense had at least one element that the other did not, and so the punishments for the convictions of the scheme to defraud and of the grand theft were proper.
It is equally clear that the appellants committed separate offenses by each separate theft, even though they involved a single client. The test of whether conduct amounts to a single or separate offense is set forth in 16 Fla.Jur.2d Criminal Law § 1394 as follows:
Where property is stolen from the same owner, or from different owners, at different times or places, or as a result of a series of acts, separated in time, place, or circumstances, each taking constitutes a separate and distinct offense.
Adverting now to appellants' next point, which involved the trial court's denial of appellants' motion to strike (filed on the day trial was to begin) the state's amended bill of particulars filed some eighteen days previously, we are not impressed that any error is demonstrated.
Appellants contend the trial court erred in allowing amendment to the bill of particulars because it allowed the state to enlarge the time frame for the commission of each of the charged criminal acts, rather than narrowing or restricting the focus of the information. However, while we concede that oftentimes the amendment does restrict and narrow the period of time within which the state contends the crime was committed, we know of no limitation precluding the state from enlarging the time if the evidence justifies such change. The purpose of a bill of particulars is to notify the defendant of the particular acts relied upon by the state to establish the crime charged, that the defendant may be fully advised of the nature and cause of the accusation against him so he may adequately prepare his defense. Hoffman v. State, 397 So.2d 288 (Fla. 1981); Middleton v. State, 74 Fla. 234, 76 So. 785 (1917). The focus of the state's case can be sharpened as much sometimes by broadening the time frame as by narrowing it. Thus, we are unimpressed by this aspect of appellants' argument. Nevertheless, recognizing the realities of preparing a case of this magnitude for trial, we are not insensitive to problems that can be created by amendments as the case progresses toward trial. Thus, it would seem the most logical tool to invoke under those circumstances, if the lateness in time was a problem, was to request a continuance. No such motion was made; apparently appellants preferred to proceed with the trial. The bottom line of this point, as we see it, is, if no evidence of prejudice is shown, no reversible error will be found.
Bentley contends the trial court erred in sentencing because the sentencing guidelines provided by Rule 3.710, Florida Rules of Criminal Procedure, were not followed.
In the present case the trial judge belatedly put his reasons for deviation in writing. They were five in number and are paraphrased as follows:
1. The scheme to defraud was well organized and occurred over a five year period.
2. The offenses involved a great deal of sophistication and premeditation.
3. The defendant used his position of trust vis a vis his clients to facilitate commission of the offenses.
4. Defendant used his employees to participate in the commission of the offenses by means of monetary rewards in that bonuses were paid for collecting overages and not remitting them to clients.
5. The sentence is necessary to deter others in a similar position.
While grounds three and five have been held improper, one and four appear to us to be adequate grounds for deviation. Thus, we find no error in this regard.
With regard to his sentencing, Gitman contends the trial court erred in not following Rule 3.720(b), Florida Rules of Criminal Procedure, which requires the trial judge to "entertain submissions and evidence by the parties which are relevant to the sentence." The problem being dealt with here arose because Gitman collapsed *373 while the jury was deliberating and was taken to the hospital. Thus, when the jury returned with its verdict, Gitman's verdict was sealed awaiting his availability upon recovery. The colloquy between counsel and the court led to what we believe was a legitimate misunderstanding so that when Gitman and counsel appeared along with the jury to receive the Gitman verdict, Gitman was not prepared for sentencing. His counsel understood the sentencing hearing was set for October 28, 1984, approximately a month later. Since the rule in question is mandatory and there was a legitimate misunderstanding, justice would best be served by resentencing Gitman and allowing him to submit any relevant evidence regarding his sentence. The fact that he could have filed a motion in mitigation as provided in Rule 3.800, Florida Rules of Criminal Procedure, does not answer the problem. Mason v. State, 366 So.2d 171 (Fla. 3d DCA 1979).
Having treated all of appellant's points that we feel justify special mention, we affirm the judgment and sentence as to Bentley. We affirm the judgment of guilty as to Gitman but reverse his sentence and remand to the trial court to resentence Gitman after entertaining such submissions and evidence pursuant to Rule 3.720, Florida Rules of Criminal Procedure, as may be submitted.
AFFIRMED IN PART and REVERSED IN PART, and remanded.
ANSTEAD, J., concurs.
WALDEN, J., dissents with opinion.
WALDEN, Judge, dissenting.
I respectfully dissent because, in my opinion, the proofs were insufficient, as a matter of law, to support criminal convictions. At most, Bentley committed a civil wrong compensable by damages by being guilty of sloppy and negligent business practices.
I would reverse and remand with instructions to discharge Bentley.

ON PETITION FOR REHEARING
PER CURIAM.
Appellants point out that our opinion uses the wrong standard of review in determining the propriety of the denial of appellants' motion for judgment of acquittal. Conceding the point, we vacate that portion of the opinion in which we stated that our task was "... simply to examine the record to see if there is substantial competent evidence to support the verdicts of guilty ..." and in its place state the following:
We recognize that on an appeal from the denial of a motion for judgment of acquittal, the appellate court must determine whether the jury could reasonably have concluded that the evidence excluded every reasonable hypothesis but that of guilt. McArthur v. State, 351 So.2d 972 (Fla. 1977); Green v. State, 408 So.2d 1086 (Fla. 4th DCA 1982). From our examination of the record it appears that there was sufficient evidence for the jury to reasonably conclude that the evidence failed to exclude every reasonable hypothesis but that of guilt.
With that amendment to the opinion, we deny the petitions for rehearing.
DOWNEY and ANSTEAD, JJ., concur.
WALDEN, J., dissents with opinion.
WALDEN, Judge, dissenting:
While I agree that the original opinion of the majority employed the wrong standard of review, I continue to believe that the proofs using either standard were insufficient to support criminal convictions.
Moreover, considering the closeness of the case, I now feel that it was harmful error to allow the prosecutor to tell the jury that another management level officer had pled guilty. Thus, I would reverse upon authority of Travieso v. State, 480 So.2d 100 (Fla. 4th DCA 1985).