2017 ND 190
**STATE of North Dakota, Plaintiff and Appellee**

v.

**Brady Joel BLOTSKE, Defendant and Appellant**

**No. 20160339**

Supreme Court of North Dakota.

Filed 7/31/2017

Ladd R. Erickson, State's Attorney, Washburn, ND, for plaintiff and appellee; submitted on brief.

Scott O. Diamond, Fargo, ND, for defendant and appellant.

Kapsner, Justice.

[¶1] Brady Blotske appeals from a criminal judgment entered after a jury found him guilty of gross sexual imposition, felonious restraint, and terrorizing. Because we conclude the district court erred in denying Blotske's request for a mistrial, we reverse and remand for a new trial.

**I**

[¶2] On May 11, 2015, Blotske was charged with gross sexual imposition, felonious restraint, and terrorizing. The charges arose from an incident involving his former girlfriend. The case was tried before a jury. Before trial began, the State informed the district court and Blotske of its intention to introduce a video interview of Blotske by an investigating officer. The parties stipulated to the foundation and admission of the video after discussing some objections to portions of the video. Blotske's counsel was concerned the officer and Blotske discussed allegations of child molestation during the video interview. Blotske's counsel noted the allegations had been investigated, were unfounded, and made the court aware he would object if the statements were played before the jury. The State agreed the statements should not be played for the jury. The district court stated, "I think what we'll do, as both of you have indicated, is try our best to avoid it, and if it comes up, we'll sustain objections and maybe in closing as indicated. So I guess that's the best way to avoid it."

[¶3] At trial, the jury heard testimony from the victim, two detectives, Blotske's father, Blotske's sister, a friend of the victim, and Blotske himself. The victim and Blotske gave conflicting accounts of what occurred on the night of the incident. The victim testified after an argument, Blotske struck her, bound her wrists with electrical tape, and then forced vaginal and anal sexual intercourse with her. The victim also testified Blotske pointed a gun at her and threatened to kill both her and himself while holding a gun to his head. Blotske testified he and the victim had consensual sex after an argument and that he only bound the victim's wrists to prevent her from driving drunk with children in the car. Blotske testified he handed the gun to the victim because, as they argued, the victim said she wanted to kill herself. Blotske stated the gun was not loaded when he handed it to her and that he did not know why he handed the gun to the victim.

[¶4] During the testimony of one of the detectives, the State offered the video interview and stated, "pursuant to the previous stipulation where we admitted the tape, I would like to play about 13 minutes of the interview where they actually get into the specifics." The State played the video for the jury. Blotske's counsel objected because the video began to play content the parties had agreed to omit. The district court permitted the State to address the jury about the statement. The State said to the jury:

> He talks about a molestation. There is absolutely no evidence of any child molestation by any Blotskes. It's talking about something else. I was trying to exclude that. Okay. Detective Lincoln investigated an allegation from the victim's sister that was totally unfounded historically, but it comes up in this conversation. Okay. But they did not molest any children, neither of the Blotskes. Okay. So don't have any inference that we think that happened, because there's no evidence of it. They were cleared.

The district court directed the jury to disregard the information. After a discussion off the record, the court addressed the jury again in order to give an explanation and permitted the State to explain that the allegations were unfounded. Blotske's counsel indicated what was played for the jury was prejudicial to the defense and asked the court for a curative instruction.

[¶5] Blotske requested a mistrial just before the second day of trial was set to begin. Blotske's counsel argued the statements on the video were prejudicial and when the State addressed the jury about

the statements, it brought further attention to the misinformation and tainted the jury beyond repair. The State resisted the motion for mistrial. In considering whether to grant a mistrial, the district court stated:

> Correct me if I'm wrong, I think both of you may have heard [Blotske] mention it in his testimony. In one of his narrative answers, I think he made it—you stopped him at that point if I'm not mistaken, but it was brought up by your client as well just so you both understand that. I understand the objection. I understand that you've made the offer of proof, and we'll have that on the record, but I'm going to overrule the objection. The motion for mistrial is denied.

The district court then offered to give a curative instruction. The court stated the curative instruction would say, "The jury will disregard any reference to molestation heard or referenced in the video played. No evidence or basis of any crime were found. The jury should not consider such in your deliberations." The parties agreed to the curative instruction.

[¶6] Blotske's counsel also requested a lesser-included-offense instruction be given to the jury for the offense of sexual assault. Blotske argued there were two separate incidents: one involving penetration, and one that did not involve penetration. The State opposed the inclusion of a lesser-included-offense instruction. The district court denied Blotske's request for a lesser-included-offense instruction.

[¶7] After closing arguments, the jury deliberated and returned a verdict of guilty on all counts. The district court entered a criminal judgment for convictions of gross sexual imposition, felonious restraint, and terrorizing on September 20, 2016. Blotske was sentenced to incarceration. On October 10, 2016, Blotske filed a notice of appeal.

## II

[¶8] Blotske argues the district court abused its discretion when it denied his motion for mistrial and requests this Court reverse and remand for a new trial. Blotske contends the State introduced inadmissible and highly prejudicial video evidence at trial, and the district court inappropriately permitted the State to address the jury about the prejudicial evidence which served to exacerbate the prejudice caused by the disclosure of the evidence.

[¶9] "Generally, granting a mistrial is an extreme remedy which should be resorted to only when there is a fundamental defect or occurrence in the proceedings of the trial which makes it evident that further proceedings would be productive of manifest injustice." *State v. Skarsgard*, 2007 ND 160, ¶ 16, 739 N.W.2d 786 (quoting *State v. Klose*, 2003 ND 39, ¶ 14, 657 N.W.2d 276 (citation and internal quotation marks omitted)). "A jury is generally presumed to follow instructions, and a curative instruction to disregard certain evidence is generally sufficient to remove improper prejudice." *State v. Hernandez*, 2005 ND 214, ¶ 24, 707 N.W.2d 449. "Motions for mistrial fall within the broad discretion of the district court and will not be reversed on appeal absent a showing that the court clearly abused its discretion or that a manifest injustice would occur." *State v. Lang*, 2015 ND 181, ¶ 10, 865 N.W.2d 401. "A district court abuses its discretion when it acts in an arbitrary, unreasonable or capricious manner, or misinterprets or misapplies the law." *Id.* (quoting *State v. Doll*, 2012 ND 32, ¶ 18, 812 N.W.2d 381).

[¶10] The district court denied Blotske's request for a mistrial based, in part, on the fact Blotske alluded to the molestation allegations during his own testimony. A re-

view of the transcript reveals Blotske only vaguely alluded to the allegations during his testimony. During a redirect examination of Blotske, this exchange occurred:

Q. . . . Why was it that you didn't get into a lot of details about your sex life with Detective Lincoln?

A. Because I had been investigated probably a month and a half or two months before that—

Q. I'm going to stop you there. . . .

Blotske testified about a suicide note that was found in the home. Blotske's counsel asked questions about the note and why he had written the note. Blotske testified he wrote the note because his girlfriend had told him that he raped her. Blotske also stated:

I felt like I had nothing to live for. My family, I lost my family. Me and my father, we weren't talking anymore because of this. Everything I had worked hard for was gone, and it was all because of something that somebody had said from a thousand miles away.

[¶11] Blotske argues the procedure used by the district court and the State's comments to the jury after the disclosure were inappropriate, that both exacerbated the prejudice caused by the disclosure, and had a cumulative effect of bringing further attention to the prejudicial statements. After Blotske objected to the statements disclosed during the video interview, the district court permitted the State to explain to the jury the statement about molestation was unfounded. The State said:

He talks about a molestation. There is absolutely no evidence of any child molestation by any Blotskes. It's talking about something else. I was trying to exclude that. Okay. Detective Lincoln investigated an allegation from the victim's sister that was totally unfounded historically, but it comes up in this conversation. Okay. But they did not molest any children, neither of the Blotskes. Okay. So don't have any inference that we think that happened, because there's no evidence of it. They were cleared.

These statements were made directly to the jury during the State's case in chief. Right after the State spoke to the jury, the court and the parties had an off-the-record bench conference. After this conference, the following exchange occurred in the jury's presence:

THE COURT: Ladies and gentlemen of the jury, the video had started a little earlier than anticipated by the attorneys. There was some discussion about starting on a specific spot, and that was the numbers you heard given to the clerk. It appears that it started maybe a little earlier than that. Mr. Erickson has given an explanation of maybe what was heard on there. Mr. Erickson, anything else you want to put on the record?

MR. ERICKSON: Detective Lincoln investigated that, Your Honor. There was no evidence. It was an unfounded allegation. That's all I can say. It was not from the victim. It was from her relatives in Utah.

THE COURT: Mr. Kelsch, anything that you want to put on the record?

MR. KELSCH: Your Honor, other than the objection, it was played. It's extremely prejudicial information that I don't know how it can be unheard, but we'll do our best to I guess as far as trying to cure that with a jury instruction and potentially giving a specific jury instruction in that regard.

THE COURT: And then the court will instruct at least at this point to disregard any statement about molestation. The State's attorney has informed me a little bit into the video it may come up again. We'll try to stop it before then, but we'll disregard that at that time.

And then if we need to add an instruction at the end, we may need to do that as well. Mr. Erickson, I'll allow you to proceed.

MR. ERICKSON: Thank you.

(Video playing.)

MR. ERICKSON: I'm going to stop it there. I'm not sure about the rest. I mean, there's more, but I can live with that part. And then we don't have a problem. If the defense wants more, I guess—

Blotske raised arguments for mistrial based, in part, on the State's commentary on the prejudicial statements:

I think [the statements played during the video] coupled with Mr. Erickson's addressing of the jury saying, you know, don't consider this, you know, molestation is not part of it brought further attention to it, prejudiced and ultimately tainted the jury beyond I guess repair.

■ [¶12] Under Rule 103(d), N.D.R.Ev., a district court is required to conduct a jury trial in a manner which avoids the suggestion of inadmissible evidence. "To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury." N.D.R.Ev. 103(d). It is error under Rule 103(d) for a district court to permit counsel to comment on the evidence in the middle of trial in the presence of the jury.

■ [¶13] Blotske also argues the prosecutor's statements to the jury that the allegations did not come from the victim were made to bolster the victim's credibility. When a prosecutor makes inappropriate comments to a jury, this Court "must consider the probable effect the prosecutor's [inappropriate comments] would have on the jury's ability to judge

the evidence fairly." *City of Williston v. Hegstad*, 1997 ND 56, ¶ 8, 562 N.W.2d 91 (quoting *Grand Forks v. Cameron*, 435 N.W.2d 700, 704 (N.D. 1989)). In *Hegstad*, the defendant and the police testified to different versions of events preceding the defendant's arrest. *Id.* at ¶¶ 2-4. During closing arguments, the prosecutor argued the testifying officer's "job was to tell the truth." *Id.* at ¶ 13. This Court noted it had previously held it is "improper for a prosecuting attorney to vouch for the credibility of government witnesses in argument to the jury." *Id.* at ¶ 12 (citing *State v. Braathen*, 77 N.D. 309, 43 N.W.2d 202, 215 (1950)). "An attorney has a right to argue to the jury the credibility of witnesses as long as he confines that argument to the evidence and fair inferences that arise therefrom." *Id.* (quoting *Braathen*, 43 N.W.2d at 215). In Blotske's case, the prosecutor has gone beyond the confines of the evidence to talk about the source of unsubstantiated and irrelevant allegations. The prosecutor in *Hegstad* also made an improper comment about the defendant's post-arrest silence. *Id.* at ¶ 14. This Court determined the prosecutor's closing argument "coupled improper comment on Hegstad's post-arrest silence after receiving *Miranda* warnings with improper argument the police officers' 'job was to tell the truth.'" *Id.* This Court concluded the district court abused its discretion in overruling the defendant's objections and reversed and remanded the case for a new trial. *Id.* at ¶¶ 14-15.

■. [¶14] While not as blatant as the comments in *Hegstad*, the State subtly vouched for the victim's credibility by stating to the jury, in the middle of the trial, "It was an unfounded allegation. That's all I can say. It was not from the victim. It was from her relatives in Utah." We recognize that "[i]nappropriate prosecutorial comments, standing alone, would not justi-

fy a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *Cameron*, 435 N.W.2d at 704 (quoting *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)). However, inappropriate prosecutorial comments must be considered in the context of, and along with, other errors occurring in the proceeding. We must evaluate the effect of these statements, the disclosure itself, the State's and the district court's repeated use of the word "molestation," and the district court's actions in permitting the State to address the jury twice in the middle of trial on the jury's ability to fairly decide the case.

[¶15] Introduction of statements regarding child molestation allegations against the defendant is highly prejudicial in a trial for gross sexual imposition. These statements are the type contemplated under N.D.R.Ev. 404(b). Under N.D.R.Ev. 404(b), "[t]he general rule is that evidence of prior acts or crimes cannot be received unless substantially relevant for some purpose other than to show a probability that a defendant committed a crime charged because he acted in conformity with his past behavior." *State v. Micko*, 393 N.W.2d 741, 743-44 (N.D. 1986) (citing *State v. Ferguson*, 391 N.W.2d 172, 174 (N.D. 1986); *State v. Stevens*, 238 N.W.2d 251, 257 (N.D. 1975)). "This general rule acknowledges the inherent prejudicial effect such evidence may present to the trier of fact and limits its use under specifically recognized exceptions pertaining to motive, intent and lack of accident or mistake." *Id.* at 744. Even where there is evidence a defendant has committed prior bad acts, there is a danger such evidence may tempt a jury "to convict a defendant for his past actions rather than on evidence of the charged misconduct." *State v. Osier*, 1997 ND 170, ¶ 6, 569 N.W.2d 441 (citations omitted). Even where prior bad acts can be established and some proper purpose exists for the introduction of such evidence, a court must determine whether its probative value is outweighed by unfair prejudice under N.D.R.Ev. 403. *State v. Aabrekke*, 2011 ND 131, ¶ 15, 800 N.W.2d 284. Unfounded allegations have no probative value. Thus, the suggestion of separate allegations of criminal sexual behavior in a trial for a sex offense has a unique potential for improper prejudice to the defendant. In this case, the prosecution knew about the statements in the video interview it planned to introduce, agreed the disclosure of the statements should be avoided, and failed to take appropriate steps to avoid its introduction.

[¶16] "In the past, this Court has declined to reverse convictions based on the cumulative effect of any alleged errors because the asserted errors were not errors or, if they were error, they were not unfairly prejudicial." *State v. Parisien*, 2005 ND 152, ¶ 22, 703 N.W.2d 306 (citing *State v. Ebach*, 1999 ND 5, ¶ 16, 589 N.W.2d 566; *State v. Sievers*, 543 N.W.2d 491, 498 (N.D. 1996)). The cumulative effect of errors can, in certain circumstances, necessitate reversal and remand for new trial. In *Parisien*, we stated, "while each of the errors in this case, standing alone, arguably may have been harmless, the errors are so intertwined and interrelated that we conclude the cumulative effect of the errors requires reversal of all three criminal judgments and a remand for a new trial." *Id.* (citing *Schuhmacher v. North Dakota Hosp. Ass'n*, 528 N.W.2d 374, 383 (N.D. 1995); *Fuhrman v. Fuhrman*, 254 N.W.2d 97, 98 (N.D. 1977)). The errors in *Parisien* were summarized as follows:

> Given the jury's 17-hour workday, the lateness of the hour, the trial court's knowledge of the deadlocked jury's numerical division, the two responses to

the jurors encouraging them to continue to try to reach a verdict, the failure of the court to follow the proper procedure in addressing the jury's questions, and the lack of a record of the in-chamber conferences, we conclude that Parisien's right to be present was violated and the verdicts were improperly coerced in violation of Parisien's due process right to a fair trial.

*Id.* at ¶ 21. While *Parisien* involved the district court's handling of jury questions and allegedly coercive effect the circumstances surrounding the jury's deliberations had on the guilty verdicts, this Court did not foreclose on the possibility of different circumstances in which cumulative error may require a district court to declare a mistrial. *Id.* at ¶ 5.

[¶17] Based upon the State's disclosure of unduly prejudicial statements, the State being permitted to address the jury mid-trial on the disclosure, the district court discussing the disclosure and permitting the State to make additional comments on the disclosure before the jury, the cumulative effect of the errors in this case warrants reversal and remand for a new trial. Disclosure of allegations of child molestation during a trial for a sex offense is highly prejudicial. The State had exclusive control of the video interview and, whether intentional or not, the disclosure made during trial was avoidable. A member of this Court previously admonished "lawyers and judges increasingly must be vigilant about identifying and knowing precisely what 'evidence' is being admitted" with regard to electronically stored information. *State v. Ratliff*, 2014 ND 156, ¶ 41, 849 N.W.2d 183 (Crothers, J., concurring specially). The importance of this vigilance was made apparent in the present case. The failure to grant a mistrial was an abuse of discretion and "productive of manifest injustice." *Skarsgard*, 2007 ND 160, ¶ 16, 739 N.W.2d 786. We conclude the cumulative effect of several errors in this case requires reversal of the criminal judgment and a remand for a new trial. *See Parisien*, 2005 ND 152, ¶ 22, 703 N.W.2d 306; *Schuhmacher*, 528 N.W.2d at 383; *Fuhrman*, 254 N.W.2d at 98.

III

[¶18] Blotske also argues the district court erred in denying his request for a jury instruction for the lesser-included offense of sexual assault. Because that issue may arise on remand, we will consider it now. Blotske was charged with gross sexual imposition under N.D.C.C. § 12.1-20-03(1)(a). A person is guilty of that offense if he "engages in a sexual act with another" and "compels the victim to submit by force or by threat of imminent death, serious bodily injury, or kidnapping, to be inflicted on any human being." N.D.C.C. § 12.1-20-03(1)(a). Blotske requested a lesser-included-offense instruction for sexual assault under N.D.C.C. § 12.1-20-07(1)(a). A person is guilty of sexual assault if he "knowingly has sexual contact with another person ... [and] [t]hat person knows or has reasonable cause to believe that the contact is offensive to the other person." N.D.C.C. § 12.1-20-07(1)(a). The two offenses differ regarding the level of contact which must be proven. Sexual assault under N.D.C.C. § 12.1-20-07(1)(a), requires proof of "sexual contact" which encompasses a broader scope of contact than a "sexual act" as required for a conviction of gross sexual imposition under N.D.C.C. § 12.1-20-03(1)(a). A "sexual act" as defined in N.D.C.C. § 12.1-20-02(4), "occurs upon penetration, however slight." Whereas "sexual contact," as defined in N.D.C.C. § 12.1-20-02(5), "means any touching, whether or not through the clothing or other covering, of the sexual or other intimate parts of the person ...."

[¶19] A defendant does not have a constitutional right to a lesser-included-offense instruction. *State v. Keller*, 2005 ND 86, ¶ 10, 695 N.W.2d 703. This Court has recognized sexual assault is a lesser-included offense to gross sexual imposition. *State v. McDonell*, 550 N.W.2d 62, 63 (N.D. 1996). However, the decision to instruct the jury on a lesser-included offense is not determined by the fact that one offense is a lesser-included offense to another. "For a lesser-included-offense instruction, there must be evidence on which a jury could rationally find beyond a reasonable doubt that the defendant is not guilty of the greater offense and to find beyond a reasonable doubt that the defendant is guilty of the lesser." *State v. Foreid*, 2009 ND 41, ¶ 19, 763 N.W.2d 475 (quoting *Keller*, 2005 ND 86, ¶ 31, 695 N.W.2d 703). "The purpose of this requirement 'is to avoid a jury conviction on the lesser offense based on sympathy for the defendant or an attempt to reach a compromise even though the evidence does not support such a conviction.'" *Id.* (quoting *State v. Clinkscales*, 536 N.W.2d 661, 664 (N.D. 1995)).

[¶20] In *Foreid*, the defendant, on trial for gross sexual imposition, requested a lesser-included-offense instruction for sexual assault. 2009 ND 41, ¶ 16, 763 N.W.2d 475. Neither party disputed the defendant had intercourse with the victim and the only issue was consent. *Id.* at ¶ 20. This Court stated, "[b]ecause the only issue was consent, if the jury believed Foreid's testimony that the act was consensual, it would create a defense to both offenses, and he could not be found guilty of either sexual assault or gross sexual imposition." *Id.* This Court concluded Foreid was not entitled to a lesser-included-offense instruction because the facts of the case "would not permit a jury to rationally find Foreid guilty of sexual assault and not guilty of gross sexual imposition[.]" *Id.*

[¶21] This case is similar to *Foreid*, because Blotske argued he had consensual sex with the victim. When Blotske raised the defense of consent, he effectively admitted to the occurrence of a "sexual act." Consent would be a defense to both offenses, and if the jury believed the victim consented, "they could no more convict on a charge of sexual assault than they could on the charge of gross sexual imposition." *McDonell*, 550 N.W.2d at 64. Blotske also argued he was entitled to the lesser-included-offense instruction because the victim testified to two separate incidents: one which involved penetration and one which involved unwanted touching and grabbing over the victim's clothing. Blotske contends the instruction should have been given because the jury could have found the victim's testimony credible as to one incident, but not credible as to the other. To the extent Blotske argues the sexual assault instruction should have been presented for the jury's consideration, he would have needed to request an amendment of the verdict form to include the sexual assault instruction as an additional offense because testimony revealed there were two separate incidents. In such an instance, the jury could have found Blotske guilty of both sexual assault and gross sexual imposition, rather than one or the other. Here, the jury was required to find each of the elements of gross sexual imposition and must have done so based on the incident involving penetration. As a result, the district court did not err in denying Blotske's request for a lesser-included-offense instruction.

## IV

[¶22] Because the cumulative effect of the errors in this case was productive of manifest injustice, we conclude the district court erred in denying Blotske's request

for mistrial. We therefore reverse and remand for a new trial.

[¶23] Carol Ronning Kapsner

Lisa Fair McEvers

Daniel J. Crothers

Jerod E. Tufte

Gerald W. VandeWalle, C.J.