# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2024 ND 170

David Walter Gaddie,

Petitioner and Appellant

v.

State of North Dakota,

Respondent and Appellee

## No. 20240052

Appeal from the District Court of Grand Forks County, Northeast Judicial District, the Honorable Jay D. Knudson, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Crothers, Justice.

Monty G. Mertz, Fargo, ND, for petitioner and appellant.

Nicholas S. Samuelson, Special Assistant State's Attorney, Fargo, ND, for respondent and appellee.

**Gaddie v. State**
**No. 20240052**

**Crothers, Justice.**

[¶1]   David Gaddie appeals from a judgment denying his application for postconviction relief. Gaddie has established prosecutorial misconduct occurred during his criminal trial and he suffered prejudice as a result. We reverse the judgment denying Gaddie postconviction relief and remand the case with instructions for the district court to vacate the criminal judgment and enter other supplementary orders as required by N.D.C.C. § 29-32.1-11.

I

[¶2]   The State charged Gaddie with four counts of gross sexual imposition alleging he sexually abused a child. In a separate case, the State charged Gaddie with three counts of gross sexual imposition alleging he sexually abused the child's mother. The case concerning the mother was dismissed. The remaining case proceeded to trial. The jury found Gaddie guilty on all counts. On direct appeal Gaddie raised issues related to the jury instructions. We reversed the conviction on one count due to an unanimity problem in the jury instructions. *See State v. Gaddie*, 2022 ND 44, ¶ 15, 971 N.W.2d 811.

[¶3]   Gaddie filed an application for postconviction relief and later an amended application. He asserted various claims including ineffective assistance of counsel and prosecutorial misconduct. The State moved for partial summary dismissal based on misuse of process asserting Gaddie should have brought his claim for prosecutorial misconduct on direct appeal. The district court reserved ruling on the State's motion and held a postconviction relief hearing. The court heard testimony from Gaddie, his trial attorney, Matthew Dearth, and the two prosecutors who tried the case. Gaddie asked Dearth and the prosecutors about pre-trial discussions they had concerning a forensic interview of the child. Dearth testified the State told him it would not offer statements about Gaddie sexually abusing the child's mother that were included in a video of the interview. The prosecutors recalled discussing possible redactions with Dearth

1

but testified they did not make any redactions because Dearth did not ask them to do so.

[¶4]   The district court denied the State's motion for partial summary dismissal. The court reasoned Gaddie's claim for prosecutorial misconduct was not misuse of process because it was based on evidence outside the criminal case record. The court found the following occurred at trial:

> "During trial, the state offered a transcript of an interview Gaddie gave to law enforcement and also offered the video as an exhibit. Neither party objected. The video was received as an exhibit, and a transcript of the video was laid on the juror's chairs for them to use when they returned to the courtroom. The State asked to publish the video, and the request was granted. As the State began to play the video, Dearth asked for a sidebar. The video was stopped. Dearth indicated to the Court that the video contained statements that he objected to the jury hearing. Despite the fact that the video had already been offered and received with no objection, the Court consulted with counsel outside the presence of the jury. The State indicated it was not aware of Dearth's objections to the video. Nevertheless, the State indicated it would attempt to redact the versions of the video to which Dearth now objected."

[¶5]   The record contains two transcripts of the video. The first was entered in the docket as "Unredacted Transcribed Statement of [the Child]." The second was entered in the docket as "Redacted Transcribed Statement of [the Child]." The transcripts are identical except for page 13, where the following language is redacted in the second transcript:

> "A. Um when I explained it to her she told me what it was called and um she said that um he sexually abused me and then um I figured since he did it to me that he did it to my mom because that I knew he did it to my mom before he did it to me and so basically it happened to my mom well and me. [Verbatim.]
>
> Q. K, so used sexually abused me and my mom, you just told me that. [Verbatim.]
>
> A. My mom well grammer [sic]."

The second discussion of sexual abuse related to the child's mother begins on page 35. This discussion is not redacted in either transcript:

> "Q. Ok, thank you for correcting me. K, you said when DAVID was trying to, and you said his private part into your private part and you said you felt that wet slimy thing and you said he got scared, how do you know he got scared?
>
> A. Because he stopped and I feel like he would, he kept going with my mom because he knew my mom was scared, just like my brother's mom . . . . They were always like back down and once [verbatim] to just like sit there and cry while he yelled at them . . . .
>
> Q. Ok. S-.
>
> A. 'Cause he did stop.
>
> Q. So he didn't stop until you told your mom. You said that, um you said something about he didn't stop when he was doing this to your mom, tell me about that.
>
> A. Um well . . . um I don't know. I accidentally read my mom's notebook and I thought he was like pulling her hair and that's why she was screaming.
>
> Q. K.
>
> A. But when I read her notebook that was so.
>
> Q. K, tell me about this notebook, where'd you get it at?
>
> A. Um, my m- they gave it to her at the shelter to write what he did, but I didn't know what was what it's for um' cause it started with like stuff like I don't know um how many dates it was or um stuff like that, so I just kept reading it and, that's why she was screaming, what it said.
>
> Q. K. What do you remember reading?
>
> . . .

A. [S]aid that um he, it said um that uh he pushed her into the bunk bed and I don't know 'cause this is all I read, he pushed her into the bunk bed um covered her mouth so that she couldn't well no, it said um he pushed her into the bunk bed um took his finger and stuck it like you know you, like he went like that in her private area and when she tried to scream he covered her mouth um and then she saw me reading it and that's all I got."

[¶6] The district court denied Gaddie postconviction relief. As to Gaddie's claim for prosecutorial misconduct, the court reasoned "[t]here is absolutely nothing in the record that indicates the State engaged in some sort of nefarious plot or scheme to introduce evidence to which the Defense objected." The court characterized the situation as a misunderstanding and noted "all attorneys involved in the trial agree that regardless of what led to the confusion, none of the objectionable portions of the video where presented to the jury." Gaddie appeals from the judgment denying him postconviction relief.

II

[¶7] Gaddie asserts the statements about him sexually abusing the child's mother are inadmissible evidence of a prior bad act. He argues the State engaged in prosecutorial misconduct when it offered the prior bad act evidence without providing the requisite notice. He asserts the evidence and misconduct caused prejudice entitling him to postconviction relief.

[¶8] The Uniform Postconviction Procedure Act, N.D.C.C. ch. 29-32.1, governs postconviction relief proceedings. *Isac v. State*, 2023 ND 181, ¶ 5, 996 N.W.2d 296. The applicant bears the burden of establishing grounds for relief. *Id.* This Court reviews findings of fact under the clearly erroneous standard of review. *Id.* "'A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support the finding, a reviewing court is left with a definite and firm conviction a mistake has been made.'" *Id.* (quoting *Morris v. State*, 2019 ND 166, ¶ 6, 930 N.W.2d 195). The Court reviews questions of law de novo. *Isac*, at ¶ 5.

4

[¶9]   To establish prosecutorial misconduct, an applicant must show (1) the prosecutor's actions constitute misconduct, and (2) the misconduct had a prejudicial effect. *State v. Lyman*, 2022 ND 160, ¶ 8, 978 N.W.2d 734. The prosecutorial misconduct must be significant enough to infringe upon the defendant's right to a fair trial. *State v. Duncan*, 2011 ND 85, ¶ 12, 796 N.W.2d 672; *see also State v. Kruckenberg*, 2008 ND 212, ¶ 20, 758 N.W.2d 427. "In making that determination, this Court decides if the conduct, 'in the context of the entire trial, was sufficiently prejudicial to violate a defendant's due process rights.'" *Lyman*, at ¶ 8 (quoting *State v. Foster*, 2020 ND 85, ¶ 17, 942 N.W.2d 829). "This Court applies a de novo standard of review when determining 'whether facts rise to the level of a constitutional violation, including a claim that prosecutorial misconduct denied a defendant's due process right to a fair trial.'" *State v. Jasmann*, 2015 ND 101, ¶ 5, 862 N.W.2d 809 (quoting *State v. Pena Garcia*, 2012 ND 11, ¶ 6, 812 N.W.2d 328).

A

[¶10] The first issue is whether prosecutorial misconduct occurred. Resolution of this question requires us to decide whether the evidence at issue was admissible, and if it was not, whether the State engaged in misconduct by offering it. *See State v. Milton*, 821 N.W.2d 789, 804 (Minn. 2012) (stating "it is misconduct for a prosecutor to knowingly offer inadmissible evidence for the purpose of bringing it to the jury's attention").

[¶11] North Dakota Rule of Evidence 404(b) governs our analysis of the evidentiary issue. It provides:

> "(b) Other Crimes, Wrongs, or Acts.
>
> (1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

"'Rule 404(b) only excludes evidence of other acts and crimes committed by the defendant when they are *independent* of the charged crime, and do not fit into the rule's exceptions.'" *State v. Van Halsey*, 2022 ND 31, ¶ 14, 970 N.W.2d 227 (emphasis in original) (quoting *State v. Christensen*, 1997 ND 57, ¶ 8, 561 N.W.2d 631). The danger sought to be avoided by the rule is that evidence of a prior bad act "may tempt a jury to convict a defendant for his past actions rather than on evidence of the charged misconduct." *State v. Blotske*, 2017 ND 190, ¶ 15, 899 N.W.2d 661 (cleaned up) (quoting *State v. Osier*, 1997 ND 170, ¶ 6, 569 N.W.2d 441). To decide whether evidence of a prior bad act is admissible, the district court must conduct a three-step analysis:

> "1) the court must look to the purpose for which the evidence is introduced; 2) the evidence of the prior act or acts must be substantially reliable or clear and convincing; and 3) in criminal cases, there must be proof of the crime charged which permits the trier of fact to establish the defendant's guilt or innocence independently on the evidence presented, without consideration of the evidence of the prior acts."

*Van Halsey*, 2022 ND 31, ¶ 15 (quoting *State v. Shaw*, 2016 ND 171, ¶ 8, 883 N.W.2d 889). Even if the evidence falls into an exception to the general prohibition, the district court still must weigh its probative value against its prejudicial effect under N.D.R.Ev. 403. *State v. Aabrekke*, 2011 ND 131, ¶ 15, 800 N.W.2d 284.

[¶12] Here the evidence in question is statements made by the child, recorded during a forensic interview describing Gaddie sexually abusing the child's mother. These statements relate to criminal charges against Gaddie that were dismissed. They are set out in both the "redacted" and "unredacted" transcripts of the interview. *See supra*, at ¶ 5. The State argues the statements were "not necessarily inadmissible" because there "was no reference to another criminal case." We disagree. The rule plainly prohibits evidence of "any other . . . wrong, or act," in addition to prior crimes. This undoubtedly is evidence of a prior bad act that is independent of the criminal conduct for which Gaddie was on trial. We have explained on a number of occasions that this type of evidence is subject to Rule 404(b). *See, e.g., State v. Ritter*, 2024 ND 142, ¶¶ 2, 19, --- N.W.3d --- (forensic interview of child victim discussing separate incident where defendant

6

allegedly kissed her on the mouth and touched her butt); *Brewer v. State*, 2019 ND 69, ¶¶ 2, 13, 924 N.W.2d 87 (interview of child victim describing a different sexual assault); *Aabrekke*, 2011 ND 131, ¶¶ 4, 16 (child victim's statement that her mother was raped by the defendant).

[¶13] Because the evidence is subject to N.D.R.Ev. 404(b), we must decide whether the State's attempt to introduce it was prosecutorial misconduct as Gaddie claims. He argues the State "has not explained why two experienced prosecutors evidently thought it was appropriate to introduce highly prejudicial evidence of 'other crimes, wrongs or acts' with no notice" as prohibited by N.D.R.Ev. 404(b).

[¶14] At the postconviction relief hearing, Gaddie's trial attorney, Matthew Dearth, testified the State told him it would not offer evidence of Gaddie abusing the mother:

> "A. Yeah. I mean it was—it was—from my recollection—and I—I don't exactly remember and actually one of the things I learned from this case was that I now only talk to prosecutors about this stuff via email because then I can actually have record of it in writing. But my recollection of the conversation was basically that Mr. Younggren said, oh, yeah, yeah, of course it's not coming in. We're not—we're not—you know, we're not going to do that. It was like a ten-second conversation. I mean, it was—to me, I—and you know, maybe I should've known better—you know, fool you once, I guess, shame on me. [Verbatim.] But the—to me—like, that didn't even have to be a discussion—a full-fledged discussion about it because it was very obvious to everybody that that stuff should not have been coming in for the jury to see."

Both prosecutors testified they recalled the conversation. Assistant State's Attorney Ryan Younggren testified:

> "[I]t was brought up at that time, are there any redactions that you'd want, and his answer to us was no.
>
> Q. Based on that conversation, then you presented as an exhibit at trial the unredacted video; is that correct?

A. Yes, we did."

When asked about the prejudicial nature of the evidence, Assistant State's Attorney Younggren suggested Gaddie may have wanted the evidence of his prior bad act to be admitted. He testified: "I don't presume to know as well as the defendant or the defense lawyer what his best defense is."

[¶15] Assistant State's Attorney Renata Selzer testified:

"Q. What was discussed in this conversation?

A. If I remember the conversation correctly, we had some discussions about whether there was any—still any possibility that we could reach a settlement in the case. We talked about—there was a cell phone download that we talked to Mr. Dearth about getting to him. And then we—we also discussed just the trial, and during that conversation, we asked Mr. Dearth whether there was anything that needed to be redacted.

Q. What was Mr. Dearth's response?

A. He said no.

. . .

Q. Okay. So as far as whether anything needed to be redacted, how do we know what you were referring to?

A. You know, I don't know if we specified exactly what piece of evidence we were referring to. It could've just been a general, like, okay, do we need to redact anything prior to trial? Because if we do, let us know now. You know, I can't tell you for certain what we said that we specified a particular piece of evidence."

[¶16] After Dearth objected during the criminal trial, the State responded:

"I wanted to make sure that this wasn't something that we were going to end up stuck on. And I asked counsel or we did if there's anything that he wanted excised from these videos and at the time his answer was no, that's why we didn't pull these pieces out.

8

Clearly, we aren't trying that case and we're not interested in that information.

. . .

I don't want to place a bunch of undue blame but I thought of this. I thought it, personally from the State's side I thought since it just breezed over the top of it that it wasn't going to be an issue but I understand what we're here for."

[¶17] The record shows the State had knowledge prior bad act statements were in the video but nonetheless offered them on the basis that Gaddie did not request specific redactions. This constitutes a clear violation of N.D.R.Ev. 404(b)(3), which requires prosecutors to give written notice and explanation if they intend to offer prior bad act evidence:

"(3) Notice in a Criminal Case. In a criminal case, the prosecutor must:

(A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;

(B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and

(C) do so in writing before trial or in any form during trial if the court, for good cause, excuses lack of pretrial notice."

The notice requirement protects the defendant and exists to prevent the district court from erroneously admitting such evidence without conducting the required analysis. *State v. Schmeets*, 2009 ND 163, ¶ 16, 772 N.W.2d 623. Notice by the State "provides an alert to the district judge that the N.D.R.Ev. 403 balancing test must be done." *Id.* Admission of prior bad act evidence without weighing its probative value against its prejudicial effect constitutes an abuse of discretion. *Ritter*, 2024 ND 142, ¶ 28 (reversing criminal conviction for sexual assault because district court did not weigh the probative value against the prejudicial effect of evidence of prior sexual misconduct).

9

[¶18] The State's knowing introduction of the prior bad act evidence coupled with its failure to comply with the Rule 404(b) notice requirement constitutes prosecutorial misconduct. The State argues this was a "misunderstanding between the attorneys, not an intentional scheme to backdoor evidence to which the defense objected." The State has not provided us with authority for the proposition that a criminal defendant alleging prosecutorial misconduct is required to prove a nefarious intent. Furthermore, its argument fails to acknowledge that in another context we held otherwise. *See In re Disciplinary Action Against Feland*, 2012 ND 174, ¶ 25, 820 N.W.2d 672 ("We conclude the reach of Rule 3.8(d) is not limited to a prosecutor's intentional failure to disclose exculpatory evidence, but also applies to a knowing or negligent failure to disclose."). We reject the State's argument that Gaddie was required to prove the prosecutors intended that this misconduct occur.

B

[¶19] Having determined prosecutorial misconduct occurred, we must address the second prong of our test—whether prejudice resulted. The State argues Gaddie failed to meet his burden because he has not provided proof the jury "saw the part of the video Dearth considered objectionable," and "[n]or is there any evidence of prejudice from the jury briefly having the unredacted transcripts." However, as Gaddie has repeatedly pointed out, prior bad act evidence is in *both* the redacted and unredacted transcripts. In addition, for purposes of this appeal, the State stipulated in the criminal case that four video clips "compromise [sic] the materials in the underlying criminal matter" at docket entry number 166. The first prior bad act evidence, which is redacted in the second transcript, is excluded from the video. The second more-detailed description of abuse is included in the video in full. We presume the jury considered all of the evidence when deliberating. *See Flynt v. State,* 183 So.3d 1, 11, (Miss. 2015) (stating the "Court presumes that the jury considered all of the evidence"); *Britton v. State*, 211 P.3d 514, 518 (Wyo. 2009) (same); *State v. Ortiz*, 588 A.2d 127, 138 (Conn. 1991) (same); *United States v. Doyle*, 786 F.2d 1440, 1442 (9th Cir. 1986) (same).

[¶20] This Court has warned of the prejudice created by admission of prior sexual misconduct during a criminal prosecution for a sex-related crime. *See, e.g. Blotske*, 2017 ND 190, ¶ 15 (stating "the suggestion of separate allegations of criminal sexual behavior in a trial for a sex offense has a unique potential for improper prejudice to the defendant"). We have a long history of reversing convictions in this context because such evidence is "highly prejudicial in a trial for gross sexual imposition." *Id.; see also Osier*, 1997 ND 170, ¶ 1 (reversing conviction for sexual abuse of a minor when the district court admitted evidence the defendant engaged in prior incidents of sexual misconduct with a minor); *State v. Forsland*, 326 N.W.2d 688, 694 (N.D. 1982) (reversing conviction for sexual assault after evidence of indecent exposure conviction was admitted); *State v. Flath*, 237 N.W. 792, 794 (N.D. 1931) (reversing conviction for taking indecent liberty with a child after other children were allowed to testify about similar abuse). We also have determined admission of evidence very similar to the statements here caused prejudice that warranted reversal of criminal convictions. *See, e.g. Ritter*, 2024 ND 142, ¶ 30 (reversing conviction after district court admitted video of forensic interview of a child discussing a separate instance of abuse without conducting the requisite analysis); *Brewer*, 2019 ND 69, ¶ 16 (postconviction relief applicant suffered prejudice as a result of attorney's failure to object to forensic interview of child discussing a separate instance of abuse); *Aabrekke*, 2011 ND 131, ¶ 16 (reversing conviction after district court allowed minor complainant to testify defendant raped her mother without conducting the requisite analysis or providing a cautionary instruction).

[¶21] Along with the prejudicial nature of the evidence itself, Gaddie asserts he suffered prejudice when his trial counsel was surprised by the State's introduction of the evidence. Dearth admitted he had been practicing law for roughly four years at the time of this trial and had never tried a felony GSI case prior to representing Gaddie. Dearth testified he was "a little bit shocked" and "that was dominating my thinking at that point." Despite sustaining Dearth's objection, the district court reprimanded him for raising the issue. The court stated:

> "Well, it seems to me the State's offered this video that they were going to show and if you had a problem you should have raised it

with them long before five minutes ago and so I think much of the blame is on you. Maybe I shouldn't say that but we're in a very awkward situation here, I'm not pleased with it."

The record indicates the incident caused considerable confusion during Gaddie's trial. Dearth testified he did not move for a mistrial because, at the time, he thought his objection and the State's redaction had remedied the problem.

[¶22] We are not persuaded by the State's assertion that there is no indication prejudice occurred. The State offered detailed evidence of sexual abuse allegedly perpetrated by Gaddie on another person for no permissible purpose and without the notice required by our rules. The State agreed to redact the material and then failed to do so. The State's conduct resulted in the district court apparently admitting the evidence without intending to do so and without weighing its prejudicial nature against any type of probative value. Gaddie has shown the prosecutorial misconduct in this case infringed his due process right to a fair trial. Gaddie therefore is entitled to postconviction relief under N.D.C.C. § 29-32.1-01(1)(a) (conviction obtained in violation of the law or constitution).

## III

[¶23] We decline to address the other issues raised by Gaddie because they are unnecessary to our decision and unlikely to reoccur. The district court's judgment denying Gaddie's application for postconviction relief is reversed and the case is remanded with instructions for the district court to vacate the criminal judgment and enter any other supplementary orders required by N.D.C.C. § 29-32.1-11.

[¶24] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr

12